[No. G032874. Fourth Dist., Div. Three. Dec. 21, 2004.]

WESELOH FAMILY LIMITED PARTNERSHIP et al., Plaintiffs, Cross-defendants and Appellants, v.
K.L. WESSEL CONSTRUCTION CO., INC., Defendant, Cross-complainant and Appellant;
OWEN ENGINEERING GROUP et al., Defendants, Cross-defendants and Respondents.

156

COUNSEL

Musick, Peeler & Garrett, Jack W. Fleming and Cheryl A. Orr for Plaintiffs, Cross-defendants and Appellants.

Stewart, Fry, Marshall & Zell, Fry, Marshall & Zell, Brian A. Bauer, Carter A. Mudge and Mark G. Harris for Defendant, Cross-complainant and Appellant.

Morris Polich & Purdy, David L. Brandon, Richard H. Nakamura, Jr., and James M. Chantland for Defendants, Cross-defendants and Respondents.

## OPINION

### FYBEL, J.—

## INTRODUCTION

Design engineers designed retaining walls for an automobile dealership project. They contracted with the builder of the walls. After a portion of the retaining walls failed and the project suffered damage, the property owner sued the design engineers for negligence. The general contractor sued the design engineers for negligence and equitable indemnity. The trial court granted motions for summary judgment on the ground the design engineers did not owe a duty of care to the property owner or the general contractor. We affirm.

■ We apply the burden-shifting standards of Code of Civil Procedure section 437c, subdivision (p)(2), and conclude the design engineers met their

initial burden of showing no duty of care existed. The burden then shifted to the property owner and the general contractor to produce evidence showing the existence of a duty or a triable issue of material fact relevant to determining whether a duty existed. The property owner and the general contractor failed to carry this burden, considering the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*) and *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745] (*Bily*). Therefore, the design engineers did not owe the property owner or the general contractor a duty of care in this case.

Because the design engineers did not owe such a duty to the property owner, the general contractor's claim for equitable indemnity also fails. (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848 [14 Cal.Rptr.3d 721].)

## SUMMARY OF UNDISPUTED FACTS[1]

Weseloh Family Limited Partnership (Weseloh) owns property in San Juan Capistrano (the property) which is leased by Weseloh & Sons, LLC, and Weseloh Corporation. (All three entities are collectively referred to as the Weseloh plaintiffs.)

On May 10, 1999, the Weseloh plaintiffs contracted with a general contractor, K.L. Wessel Construction Co., Inc. (Wessel), to construct automobile dealership facilities on the property (the project). Subcontractor Sierra Pacific Earth Retention Corporation (Sierra), which has done business under the name Retaining Wall Company North, built the retaining walls for the project. Charles Randle performed consulting work on the project for Sierra and " 'supervised the design work of the design engineers that worked on the Weseloh project at all times.' " Randle, who was employed by Owen Engineering Company (Owen) during unspecified time periods, was paid $1,500 or $2,200 for his design of two Keystone walls. Randle was aware that Weseloh owned the property.

Neither Randle nor Owen ever (1) contracted with the Weseloh plaintiffs or Wessel to construct the retaining walls; (2) contracted with the Weseloh plaintiffs or Wessel to prepare any design, engineering, planning, and/or review of construction, grading, manufacture and/or installation of the property or any improvements; or (3) had a role in the construction of the

---

[1] The summary of facts is based on undisputed evidence presented in the moving papers and in the opposition to the motions for summary judgment. Although several objections were made to evidence presented in support of and against the motions, the trial court overruled all evidentiary objections. No party contends the trial court erred by overruling any of the objections.

retaining walls. At Sierra's request, both Randle and Owen inspected the retaining walls following construction. On February 12, 2001, a portion of the retaining walls failed.

## PROCEDURAL BACKGROUND

The Weseloh plaintiffs sued Wessel, Sierra, Compaction Plus, Inc., Soils Southwest, Inc., Owen, and Randle. The second amended complaint alleged a claim against Soils Southwest, Owen, and Randle for professional negligence. The Weseloh plaintiffs alleged that Soils Southwest, Owen, and Randle "breached their respective duties of care to Plaintiffs by negligently and carelessly failing to use the care required of their respective professions in the design, planning, engineering and/or review of the construction, grading, manufacture and/or installation of the earth retention system of retaining walls on the SUBJECT PROPERTY and failed to comply with acceptable and applicable design standards, codes and relevant professional engineering customs and practices for the design of earth retention systems or retaining walls, as evidenced by the failure of such earth retention system or retaining wall designed by the Defendants as alleged herein."

The Weseloh plaintiffs further alleged, "[a]s a result of the negligence of said Defendants, and each of them, as aforesaid, as manifested by the failure of the design and construction of the earth retention system, the SUBJECT PROPERTY and improvements thereon have sustained severe physical and structural property damage, and Plaintiffs are informed and believe and based thereon allege that additional damage to the SUBJECT PROPERTY may continue to occur and may be discovered from time to time in the future." The Weseloh plaintiffs also alleged, "as a result and proximate cause of the negligence of Defendants SOILS SOUTHWEST, OWEN, RANDLE and DOES 51 THROUGH 90, as described herein, Plaintiffs have sustained and will sustain monetary damages in an amount not less than $6,000,000."

Wessel's second amended cross-complaint contained claims for equitable indemnity, total indemnity, contribution, and professional negligence against Randle and Owen.[2] With regard to its professional negligence claim, Wessel alleged it had "sustained and will sustain monetary damages including, but not limited to, litigation costs, contractor's fees, attorney's fees and consultants' fees to inspect, repair and mitigate damages arising out of said negligent design, construction, repair and maintenance and to defend against [the Weseloh plaintiffs'] action herein."

---

[2] Wessel's second amended cross-complaint also contained a claim for breach of contract to obtain insurance against all defendants. This cause of action is not mentioned in Wessel's appellate briefs, and no argument is made that that claim should have survived. We therefore do not address it further.

In October 2002, the Weseloh plaintiffs, Wessel, and Sierra entered into a settlement agreement.

In April 2003, Randle and Owen filed motions for summary judgment on the Weseloh plaintiffs' second amended complaint and Wessel's second amended cross-complaint on the following common grounds: (1) Randle and Owen could not be liable to the Weseloh plaintiffs or Wessel for negligence because Randle and Owen had no contractual relationship with the Weseloh plaintiffs or Wessel, and there was no basis to recognize a duty of care; (2) no evidence supported the claim Randle or Owen caused the failure of the retaining walls; and (3) the Weseloh plaintiffs and Wessel released Randle and Owen as part of the release of Sierra in the settlement agreement. Randle and Owen's motion for summary judgment against Wessel included the additional ground there was no basis for a claim of indemnity.

The trial court granted Randle and Owen's motions for summary judgment. The order granting summary judgment against the Weseloh plaintiffs stated in relevant part: "After consideration of all of the moving and opposing evidence, the Court concludes that the defendants Owen Engineering Group and Charles J. Randle did not owe a duty to the plaintiffs as a matter of law. The analysis of the moving parties as to the [*Biakanja*] (1958) 49 Cal.2d 647 and [*Bily*] (1992) 3 Cal.4th 370 cases is correct. All of the factors set forth in these cases belie any duty on the part of Owen Engineering Group or Charles J. Randle to the plaintiffs. Since they owed no duty of care, they cannot be liable for negligence to the plaintiffs. [¶] The opposing parties have not raised a triable issue of fact on these issues. Summary judgment is therefore appropriate." The order granting summary judgment against Wessel contained identical language, with the exception of substituting the word "cross-complainant" for "plaintiffs." The trial court added: "The claims for equitable indemnity are barred. Such claims would create a conflict of interest between the engineer and the contractor and are against public policy. *See Ratcliff* [*Architects*] *v. Vanir* [*Construction Management, Inc.*] (2001) 88 Cal.App.4th 595 and *Jaffe v. Huxley* [*Architecture*] (1988) 200 Cal.App.3d 1188."

Judgment was entered accordingly.

The Weseloh plaintiffs moved to vacate the trial court's decision granting summary judgment and for a new trial on the ground "[t]he evidence was insufficient to justify the decision and there was an error in law, in that Owen Engineering Group and Charles J. Randle, as the design engineer of the retaining wall which failed, owed a duty of care to Plaintiffs, as the property owner, for whom the wall was designed." Wessel similarly moved for a new trial on the same ground as asserted by the Weseloh plaintiffs.

The trial court denied the Weseloh plaintiffs' and Wessel's motions, stating in relevant part: "Moving Parties raise no new arguments and do not cite any law not previously considered by this Court. The Ruling was and remains correct. [¶] One of the cases cited by Moving Parties, *Oakes v. McCarthy* [*Co.*] (1968) 267 Cal.App.2d 231, correctly states the law applicable to this Action, affirming that the Court's decision was correct. After acknowledging the *Biakanja* analysis, the *Oakes* Court stated that if the nature and extent of the work performed by the professional was confined to just giving a professional opinion and advice culminating in a written report, there is no duty owed to the Plaintiffs. If the work included supervision of the actual work performed, then a duty is owed to the Plaintiffs. [¶] In this case, there are no facts, and there is no allegation that either Randle or Owen supervised the actual work done on the retaining wall or that either of them controlled, or had the right to control, the physical activities of building the retaining wall. Owen and Randle worked only in their professional capacities rendering their opinions to Sierra Pacific, for Sierra Pacific's purposes, and no evidence has been presented to the contrary. The *Bily* and *Biakanja* analysis renders the finding that Owen and Randle owed no duty to either the Plaintiffs or Wessel. [¶] Judgment was properly entered after the granting of the Motions for Summary Judgment pursuant to Code of Civil Procedure . . . § 579."

Both the Weseloh plaintiffs and Wessel appealed from the judgment entered against them and in favor of Randle and Owen, and the postjudgment denial of their motions for a new trial.

## DISCUSSION

### I.

#### STANDARD OF REVIEW AND APPLICABLE BURDENS OF PROOF

■ "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .'

[Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116]; see Code Civ. Proc., § 437c, subd. (p)(2).)

■ Our Supreme Court has explained how the burden of persuasion and/or production and the burden of proof are analyzed in motions for summary judgment. "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. Again, in *Reader's Digest* [*Assn. v. Superior Court* (1984) 37 Cal.3d 244], we held to the effect that the placement and quantum of the burden of proof at trial were crucial for purposes of summary judgment. [Citation.] . . . Thus, if a plaintiff who would bear the burden of proof by a preponderance of evidence at trial moves for summary judgment, he must present evidence that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment *as a matter of law*, but would have to present his evidence to a trier of fact. By contrast, if a defendant moves for summary judgment against such a plaintiff, he must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851 [107 Cal.Rptr.2d 841, 24 P.3d 493], fns. omitted.)

II.

OWEN AND RANDLE SATISFIED THEIR BURDEN UNDER CODE OF CIVIL PROCEDURE SECTION 437c, SUBDIVISION (p)(2) BY PRODUCING EVIDENCE SHOWING THEY DID NOT OWE A DUTY OF CARE TO EITHER THE WESELOH PLAINTIFFS OR WESSEL

■ The California Supreme Court has stated, " '[n]egligence is conduct which falls below the standard established by law for the protection of others.' [Citation.] 'Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.' [Citation.] [¶] The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. [Citation.] [¶] A judicial conclusion that a duty is present or absent is merely ' "a shorthand statement . . . rather than an aid to analysis . . . . '[D]uty,' is not sacrosanct in itself, but only an expression of the sum total of

those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citations.] 'Courts, however, have invoked the concept of duty to limit generally "the otherwise potentially infinite liability which would follow from every negligent act . . . ." ' " (*Bily, supra*, 3 Cal.4th 370, 396–397.)

In their motions for summary judgment, Randle and Owen produced undisputed evidence showing they did not owe the Weseloh plaintiffs or Wessel a duty of care in designing the retaining walls: (1) the Weseloh plaintiffs contracted with Wessel to construct automobile dealership facilities at the property; (2) Randle worked for Sierra;[3] (3) Sierra built the retaining walls at the project; (4) a portion of the retaining walls failed; (5) neither Randle nor Owen had a "role in the construction" of the retaining walls; (6) neither Randle nor Owen entered into a contract with the Weseloh plaintiffs; (7) neither Randle nor Owen entered into a contract with Wessel; and (8) neither Randle nor Owen was ever compensated by the Weseloh plaintiffs or Wessel for any work performed for the project.

Randle and Owen showed they had no contractual privity with either the Weseloh plaintiffs or Wessel and performed only professional design services for a subcontractor involved in the project. They therefore carried the burden of producing evidence that the Weseloh plaintiffs' and Wessel's negligence claims failed because no duty of care existed. As a result, the burden shifted to the Weseloh plaintiffs and Wessel to show such a duty existed or to show there existed a triable issue of material fact relevant to the determination of the duty issue. (Code Civ. Proc., § 437c, subd. (p)(2).)

### III.

#### SUMMARY OF *BIAKANJA* AND *BILY*

In their opposition to the motion for summary judgment, the Weseloh plaintiffs argued the lack of contractual privity with Randle and Owen did not preclude a finding of a duty and the analyses of the California Supreme Court's decisions in *Biakanja, supra*, 49 Cal.2d 647 and *Bily, supra*, 3 Cal.4th 370 "[s]upport[ed] *Imposition of a Duty in This Case*." It is correct the lack of privity of contract does not preclude imposition of a duty of care. Under these circumstances, does a duty in negligence exist?

The Supreme Court in *Bily, supra*, 3 Cal.4th 370, 397–398, citing *Biakanja, supra*, 49 Cal.2d 647, 650, stated: "We have employed a checklist

---

[3] Although it is disputed whether Randle worked for Sierra as an employee or as an independent contractor, it is not disputed he performed design services for Sierra.

of factors to consider in assessing legal duty in the absence of privity of contract between a plaintiff and a defendant. . . . 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' " (See *Aas v. Superior Court* (2000) 24 Cal.4th 627, 644 [101 Cal.Rptr.2d 718, 12 P.3d 1125] ["case-by-case test for identifying such a duty" involves balancing the factors set forth in *Biakanja*].)

In *Biakanja, supra*, 49 Cal.2d 647, 648, a notary public prepared a will for the plaintiff's brother through which the plaintiff was bequeathed all of his brother's property. The will was denied probate due to a lack of sufficient attestation and plaintiff received only one-eighth of the brother's estate. (*Ibid.*) The plaintiff sued the notary public for negligence. (*Ibid.*) Applying the above quoted checklist of factors (the *Biakanja* factors), the Supreme Court held the notary public was liable to the plaintiff for negligence notwithstanding the lack of contractual privity between them. (*Id.* at pp. 650–651.) The court stated, "Here, the 'end and aim' of the transaction was to provide for the passing of Maroevich's estate to plaintiff. [Citation.] Defendant must have been aware from the terms of the will itself that, if faulty solemnization caused the will to be invalid, plaintiff would suffer the very loss which occurred. As Maroevich died without revoking his will, plaintiff, but for defendant's negligence, would have received all of the Maroevich estate, and the fact that she received only one-eighth of the estate was directly caused by defendant's conduct. [¶] Defendant undertook to provide for the formal disposition of Maroevich's estate by drafting and supervising the execution of a will. This was an important transaction requiring specialized skill, and defendant clearly was not qualified to undertake it. His conduct was not only negligent but was also highly improper. He engaged in the unauthorized practice of the law [citations], which is a misdemeanor in violation of section 6126 of the Business and Professions Code. Such conduct should be discouraged and not protected by immunity from civil liability, as would be the case if plaintiff, the only person who suffered a loss, were denied a right of action." (*Ibid.*, fn. omitted.)

In *Bily, supra*, 3 Cal.4th 370, 375, the California Supreme Court considered whether an auditor owes a duty of care to third persons in the preparation of an independent audit of a client's financial statements. The court held that auditors, as a group, do not owe a duty of care to third parties: "[A]n auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client, i.e., the person who

contracts for or engages the audit services. Other persons may not recover on a pure negligence theory." (*Id.* at p. 406, fn. omitted.) The Supreme Court stated its holding was viewed in light of the *Biakanja* factors, and was "premised on three central concerns": (1) an auditor exposed to negligence claims from all foreseeable third parties would face potential liability far out of proportion to its fault; (2) "the generally more sophisticated class of plaintiffs in auditor liability cases . . . permits the effective use of contract rather than tort liability to control and adjust the relevant risks through 'private ordering' "; and (3) "the asserted advantages of more accurate auditing and more efficient loss spreading relied upon by those who advocate a pure foreseeability approach are unlikely to occur." (*Id.* at p. 398.) (We refer to the three concerns stated in *Bily*, *supra*, 3 Cal.4th at page 398 as the *Bily* factors.)

We turn to the record in this case and consider the evidence produced by the Weseloh plaintiffs and Wessel in an effort to carry their burden of proving the existence of either a duty of care or a triable issue of material fact relevant to resolving the question whether a duty existed.

## IV.

### THE WESELOH PLAINTIFFS AND WESSEL FAILED TO CARRY THEIR BURDEN OF SHOWING RANDLE AND OWEN OWED A DUTY OF CARE TO THEM OR A TRIABLE ISSUE OF MATERIAL FACT PERTINENT TO THE DETERMINATION OF THE DUTY ISSUE

The Weseloh plaintiffs produced the following additional evidence relevant to the duty question in opposition to Randle and Owen's motion for summary judgment: (1) Randle performed design work on the project as a consultant for Sierra but "knew that Weseloh was the owner of the project in 1998/1999"; (2) Randle " 'supervised the design work of the design engineers that worked on the Weseloh project' "; (3) Randle was paid $1,500 or $2,200 for his design work; (4) work performed by Randle and/or Owen on the project was defective; (5) Randle used the soils report prepared by Soils Southwest as a reference, making the decision not to use the values therein because they addressed crib walls and conventional walls and did not apply to the project's Keystone walls; and (6) Randle "testified in his deposition that he 'used an accepted standard of the industry, which is the ICBO approved manual for Keystone wall construction.' "

The Weseloh plaintiffs and Wessel produced evidence Randle's signature and stamp appeared on two earth retention calculations submitted to the City of San Juan Capistrano, which identified Retaining Wall Company North (Sierra) as the "preparer," stated the calculations were "prepared for" Wessel, and identified the "site" as Weseloh Chevrolet.

We next apply the undisputed facts in this case to the *Biakanja* factors and the *Bily* factors.

A.

Application of *Biakanja* Factors

1. *Extent to which Randle and Owen's design was intended to affect the Weseloh Plaintiffs and Wessel*

The undisputed evidence showed neither Randle nor Owen worked for, or contracted with, the Weseloh plaintiffs or Wessel. Randle and Owen worked for Sierra by creating a design for the retaining walls, but did not participate in Sierra's construction of the walls. There was no evidence of an intended beneficiary clause in any contract related to the design of the retaining walls, identifying the Weseloh plaintiffs or Wessel as the intended beneficiary of work performed by Randle and Owen.

Randle was aware the property was owned by Weseloh. Although his name and stamp appeared on the earth retention calculations prepared for Wessel, the calculations themselves identified the preparer as Retaining Walls Company North (Sierra), not Randle or Owen. This evidence bolsters the position that Randle and Owen's role in the project was to primarily benefit Sierra as the preparer of the calculations. To the extent Randle and Owen's participation in the project would also benefit Wessel and the Weseloh plaintiffs, it was only through Sierra.

2. *Foreseeability of injury*

The California Supreme Court gave limited weight to the foreseeability factor in determining whether a duty existed in *Bily*, *supra*, 3 Cal.4th 370, 398: "Foreseeability of injury, however, is but one factor to be considered in the imposition of negligence liability. Even when foreseeability was present, we have on several recent occasions declined to allow recovery on a negligence theory when damage awards threatened to impose liability out of proportion to fault or to promote virtually unlimited responsibility for intangible injury." The *Bily* court stated, "[e]mphasizing the important role of policy factors in determining negligence, we observed that 'there are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury.' " (*Id.* at p. 399.)

Here, the Weseloh plaintiffs sought property damages in addition to economic damages. We recognize *Bily*, *supra*, 3 Cal.4th 370, 379 involved

only economic damages, and we read *Bily* in that context. However we too "will not treat the mere presence of a foreseeable risk of injury to third persons as sufficient, standing alone, to impose liability for negligent conduct. We must consider other pertinent factors." (*Id.* at p. 399.)

True, it is generally foreseeable a design defect could result in the failure of a retaining wall. However, as discussed above, the Weseloh plaintiffs and Wessel failed to produce evidence showing how and the extent to which their damages were caused by the asserted design defects. This is a significant fact in light of the absence of evidence showing Randle and Owen's design was followed without alteration. For the reasons set forth in *Bily* and the insufficiency of the evidence on causation in this case, we give the factor of foreseeability limited weight.

### 3. *Certainty the Weseloh Plaintiffs and Wessel sustained injury, and the closeness of the connection between Owen and Randle's conduct and that injury*

Randle and Owen appear to agree the Weseloh plaintiffs and Wessel sustained damage as a result of the failure of a portion of the retaining walls. We therefore consider the closeness of the connection between Randle and Owen's conduct and the damages sustained by the Weseloh plaintiffs and Wessel. Based on the state of the record, the evidence is insufficient to show any such connection. Wessel produced evidence Randle and Owen's design was defective in various ways, "contributing" to the failure of the retaining walls. Wessel cited the declaration of its geotechnical expert, Walter F. Crampton, in its response to Randle and Owen's separate statement. In his declaration, Crampton stated that Randle failed to take into consideration the on-site soil conditions, improperly deviated from the original design criteria, and "ultimately underdesigned the wall, contributing to the wall's failure." Crampton also stated in his declaration that "the base of the wall, including the wall's 'toe,' was improperly compacted . . . and that improper fill was placed both within the foundation and toe of the wall." One of Wessel's attorneys submitted a declaration generally stating the failure of the walls occurred "in large part" due to Randle and Owen's "participation in the design and repair of the wall." But the Weseloh plaintiffs and Wessel failed to produce evidence showing how or the extent to which those design defects actually *caused* their damages.

Although the Weseloh plaintiffs and Wessel state in their appellate opening brief "the wall had been built using his [Randle's] engineering plans," there is no evidence in the record that Sierra actually used Randle and Owen's design without alteration in constructing the retaining walls. There is no dispute Randle and Owen's role in the project was limited to the design of the

retaining walls, the supervision of the design process, and an inspection of the walls. As discussed above, there is no evidence either Randle or Owen ever participated or supervised any physical work in the construction of the retaining walls; rather, it appears Randle and Owen provided engineering services akin to professional advice and opinion. (See *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, 247–249 [73 Cal.Rptr. 127] [company that performed only "engineering services in the nature of professional advice and opinion" held liable for negligence because substantial evidence showed it also supervised and inspected actual work of cutting, filling, and compacting the soil].)

4. *Moral blame*

This case is different from *Biakanja, supra*, 49 Cal.2d 647, where the injurious conduct at issue involved the unauthorized practice of law, a misdemeanor, by a notary public in preparing a will. This case does not involve comparable " 'moral blame' " (*Bily, supra,* 3 Cal.4th at p. 397). The Weseloh plaintiffs and Wessel failed to produce any evidence implicating moral blame on Randle and Owen's part. The Weseloh plaintiffs and Wessel's opening brief does not even argue the trial court should have concluded Randle and Owen's conduct implicated moral blame.

In *Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 606 [106 Cal.Rptr.2d 1], the appellate court concluded a construction manager of a school district project did not owe a duty to the architect of the project with whom there was no contractual privity. The court stated, "when a defendant's liability rests partially under the control of another party's conduct and the plaintiff is free to contract with the other party, the defendant's 'moral blame' and connection to the plaintiff's alleged injury is too remote to justify imposition of a tort duty. [Citation.] Here, as [the construction manager] points out, the architect may protect itself against losses that the construction manager causes in its contract with [the school district]. Further, it is [the school district] that holds the decision about whether to pay the architect for any extra costs or overtime. The construction manager does not determine whether the architect should be paid and has no contract with the architect. Thus, the connection between the construction manager and the architect is tenuous." (*Id.* at pp. 606–607.)

Therefore, based on the record before us, no reason appears to assign Randle or Owen any moral blame.

5. *Policy of preventing future harm*

We next evaluate the degree future harm would be prevented by imposing a duty of care on Randle and Owen. In *Bily, supra,* 3 Cal.4th at page 404, the

Supreme Court rejected the plaintiffs' arguments regarding the benefits of expanding the scope of auditors' liability in negligence, stating: "We are not directed to any empirical data supporting these prognostications. From our review of the cases and commentary, we doubt that a significant and desirable improvement in audit care would result from an expanded rule of liability. Indeed, deleterious economic effects appear at least as likely to occur." The Supreme Court further stated, "the asserted advantages of more accurate auditing and more efficient loss spreading relied upon by those who advocate a pure foreseeability approach are unlikely to occur; indeed, dislocations of resources, including increased expense and decreased availability of auditing services in some sectors of the economy, are more probable consequences of expanded liability." (*Id.* at p. 398.)

Here, neither the Weseloh plaintiffs nor Wessel provided any evidence supporting an argument that greater care in design engineering would result from expanded liability. Instead, they argue that not recognizing a duty "would create a special exception to the law of negligence for design engineers that would insulate design engineers from liability for negligence to third parties." This is not an accurate statement. The Weseloh plaintiffs are not without the remedy of pursuing claims for damages against their general contractor, and Wessel is not without the remedy of pursuing its claims for damages against its subcontractor, Sierra. Randle and Owen, in turn, would be accountable to Sierra for any defects in the design that caused damage. Under the Weseloh plaintiffs and Wessel's theory, Randle and Owen's liability to them and to Sierra might be overlapping. Furthermore, the Weseloh plaintiffs and Wessel could have taken steps that would have enabled them to proceed directly against Randle and Owen by, for example, negotiating for the inclusion of a provision in the subcontract identifying the Weseloh plaintiffs and Wessel as the intended beneficiaries. As discussed above, there is no evidence the Weseloh plaintiffs or Wessel did so.

B.

Application of *Bily* Factors[4]

1. *Liability out of proportion to fault*

In *Bily, supra,* 3 Cal.4th at pages 401–402, the court noted, "judicial endorsement of third party negligence suits against auditors limited only by

---

[4] In the opening brief, the Weseloh plaintiffs and Wessel argue this case is distinguishable from *Bily, supra,* 3 Cal.4th 370, on the ground it "is *not* an economic loss case, but a case relating to property damage." While *Bily* involved economic damages only, the Supreme Court did not state the *Bily* factors should only be considered in cases involving economic damages and these factors appear to us to be applicable here. We therefore consider the *Bily* factors in light of the record in this case.

the concept of foreseeability raises the spectre of multibillion-dollar professional liability that is distinctly out of proportion to: (1) the fault of the auditor (which is necessarily secondary and may be based on complex differences of professional opinion); and (2) the connection between the auditor's conduct and the third party's injury (which will often be attenuated by unrelated business factors that underlie investment and credit decisions)."

The California Supreme Court expressed concern that undue emphasis on the foreseeability of an injury could result in a determination of expanded liability out of proportion to fault. (*Bily, supra,* 3 Cal.4th at p. 398.) Here, Randle and Owen created a design for Sierra to build retaining walls at the project, for which Randle and Owen were paid no more than $2,200. As discussed above, we do not know what Sierra's instructions to Randle and Owen were in creating the design or the terms of their contract. While the Weseloh plaintiffs and Wessel contended the design was deficient in various ways that "contribut[ed]" to the wall's failure, the record does not even show Sierra followed the specifications of Randle and Owen's design. Yet, the Weseloh plaintiffs' second amended complaint alleged they sustained $6,000,000 in damages as a result of Randle, Owen, and Soils Southwest's conduct. This amount does not include the unspecified damages prayed for in Wessel's second amended cross-complaint. The state of the record shows, if anything, the imposition of a duty of care on Randle and Owen to the Weseloh plaintiffs and Wessel would expose Randle and Owen to liability far out of proportion to fault.[5]

## 2. *Prospect of private ordering*

In evaluating whether to impose on an auditor a duty of care to third persons, the Supreme Court explained an audit report is not the equivalent of a consumer product because (1) "the maker of a consumer product has complete control over the design and manufacture of its product; in contrast, the auditor merely expresses an opinion about its client's financial statements"; (2) the third parties in question generally possess considerable sophistication in analyzing financial information; and (3) the third parties can privately order the risk of inaccurate financial reporting by contractual arrangements with the client. (*Bily, supra,* 3 Cal.4th at pp. 402–403.)

Because Randle and Owen had no part in the construction of the retaining walls, they, like the auditor in *Bily*, did not have complete control

---

[5] The settlement agreement between the Weseloh plaintiffs, Wessel, and Sierra stated the Weseloh plaintiffs would be paid $1,600,000 by Wessel and $1,200,000 by Sierra under its terms, and stated Soils Southwest had previously agreed to settle for $800,000 which would be paid to the Weseloh plaintiffs. Even if we subtract $3,600,000 (the sum of the above stated settlement amounts) from $6,000,000, Randle and Owen would still face significant liability ($2,400,000) to the Weseloh plaintiffs alone.

over the creation of the product—the retaining walls. As discussed above, there is no evidence in the record showing Randle and Owen's design was used without alteration. The Weseloh plaintiffs and Wessel are sophisticated parties. Before commencing an extensive construction project, the Weseloh plaintiffs and Wessel had the option of negotiating a clause naming them the intended beneficiaries in contracts related to the project and expressly providing for the right to pursue claims directly against subcontractors. "As a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools." (*Bily, supra,* 3 Cal.4th at p. 398 [the more sophisticated class of plaintiffs in auditor liability cases permits effective use of contract rather than tort liability to control and adjust the relevant risks through private ordering].) The Weseloh plaintiffs also could have required they be named as additional insureds on all insurance policies covering the risks of defective workmanship of subcontractors.

### 3. *Effect of professional services provider liability to third persons*

For all of the reasons stated above in our discussion of the fifth *Biakanja* factor, there is no evidence supporting a policy "to favor the alleged tortfeasor over the alleged victim as an effective distributor of loss." (*Bily, supra,* 3 Cal.4th at p. 405.)

### C.

### Conclusion

The parties acknowledge there is no California case directly on point, and our research has not found any case, applying the *Biakanja* factors, which holds that a design engineer who provides only professional services in a commercial construction project owes a duty of care to the property owner of the project or a general contractor, in the absence of contractual privity. As discussed above, Randle and Owen produced sufficient evidence to establish they owed no duty to the Weseloh plaintiffs or Wessel based on the design of the retaining walls for Sierra. The burden therefore shifted to the Weseloh plaintiffs and Wessel to produce evidence to prove the existence of such a duty or of a triable issue of material fact relevant to the determination of the duty issue.

The Weseloh plaintiffs and Wessel failed to produce evidence to satisfy their burden. With regard to the *Biakanja* factors, while it was foreseeable that design defects could cause a retaining wall to fail, the Weseloh plaintiffs and Wessel failed to produce any evidence showing (1) Randle and Owen's design was primarily intended to affect the Weseloh plaintiffs and Wessel;

(2) the closeness of the Weseloh plaintiffs' and Wessel's injury to Randle and Owen's conduct; (3) any moral blame implicated by Randle and Owen's conduct; or (4) how, by imposing expanded liability on design engineers under similar circumstances, future harm would be prevented.

With regard to the *Bily* factors, the imposition of such a duty would result in liability out of proportion to fault. With regard to private ordering, the Weseloh plaintiffs and Wessel could have required subcontractors to name them as intended beneficiaries of their subcontracts. The Weseloh plaintiffs could also have required subcontractors to name them as additional insureds in their insurance policies. Neither of these contract alternatives was accomplished here.

In light of the Weseloh plaintiffs and Wessel's failure to carry their burden under Code of Civil Procedure section 437c, subdivision (p)(2), the trial court properly concluded Randle and Owen did not owe them a duty of care. Our holding should not be interpreted to create a rule that a subcontractor who provides only professional services can never be liable for general negligence to a property owner or general contractor with whom no contractual privity exists. There might be a set of circumstances that would support such a duty, but it is not presented here. Judgment was properly entered against the Weseloh plaintiffs and Wessel on their claims for negligence against Randle and Owen, and the trial court properly denied the motions for a new trial on the negligence claims.

## V.

### No Claim for Negligent Misrepresentation Was Asserted

In view of arguments made by the parties, we need to address the difference between negligence and negligent misrepresentation. To the extent the Weseloh plaintiffs or Wessel justifiably relied on the defective design, they might have had a claim against Randle and Owen for negligent misrepresentation. But neither party asserted a claim for negligent misrepresentation against Randle or Owen. The Supreme Court explained in *Bily*, *supra*, 3 Cal.4th at page 407 that "neither the courts (ourselves included), the commentators, nor the authors of the Restatement Second of Torts have made clear or careful distinctions between the tort of negligence and the separate tort of negligent misrepresentation. The distinction is important not only because of the different statutory bases of the two torts, but also because it has practical implications for the trial of cases in complex areas such as the one before us." The court further explained, "[u]nder certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is 'not a casual

expression of belief' but 'a deliberate affirmation of the matters stated,' it may be regarded as a positive assertion of fact. [Citation.] Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." (*Id.* at p. 408.)

■ Affirming the Restatement Second of Torts approach as the "only one that achieves consistency in the law of negligent misrepresentation," the California Supreme Court specifically contemplated the availability of negligent misrepresentation claims to cases involving information provided by engineers: "Accountants are not unique in their position as suppliers of information and evaluations for the use and benefit of others. Other professionals, including attorneys, architects, engineers, title insurers and abstractors, and others also perform that function. And, like auditors, these professionals may also face suits by third persons claiming reliance on information and opinions generated in a professional capacity." (*Bily, supra,* 3 Cal.4th at p. 410.)

The Weseloh plaintiffs and Wessel rely on *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278 [136 Cal.Rptr. 603] and *M. Miller Co. v. Dames & Moore* (1961) 198 Cal.App.2d 305 [18 Cal.Rptr. 13] to support the existence of a general negligence claim against Randle and Owen. Those cases involved negligent misrepresentation claims, *not* general negligence claims. The California Supreme Court in *Bily, supra,* 3 Cal.4th at page 412, footnote 20, discussed those cases, stating: "The remaining cases cited by plaintiffs do not impose liability in favor of merely foreseeable users of professional communications; indeed, they are generally consistent with Restatement Second of Torts section 552 [Information Negligently Supplied for the Guidance of Others] and the 'intended beneficiary model.' "

## VI.

### WESSEL'S EQUITABLE INDEMNITY CLAIM FAILS BECAUSE NEITHER RANDLE NOR OWEN OWED A DUTY TO THE WESELOH PLAINTIFFS

■ In light of our holding neither Randle nor Owen owed a duty to the Weseloh plaintiffs, Wessel's equitable indemnity claim, which requires that such a duty exist, necessarily fails. In *Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1191–1192 [246 Cal.Rptr. 432], the appellate court stated, "equitable indemnification is a matter of fairness. ' "[I]n the great majority of cases . . . equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor." ' [Citation.] There

seems no logical reason why the application of this doctrine should turn on the relationship of the tortfeasors to each other. What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done."

 In *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc., supra*, 119 Cal.App.4th 848, 850, 14 Cal.Rptr.3d 721,[6] a school district entered into a contract with an architect to prepare architectural drawings for and to supervise construction of a high school. The district also entered into contracts with general contractors for the site phase and construction phase. (*Ibid.*) The district sued the architect for breach of contract and professional negligence resulting from delay costs incurred by one of the general contractors due to alleged design defects. (*Id.* at pp. 850–851.) The architect sued the general contractors for negligence, equitable indemnity, apportionment of fault/contribution, and declaratory relief. (*Id.* at p. 851.) The trial court sustained the general contractors' demurrers to the architect's equitable indemnity claim (*id.* at p. 851) and a panel of this court affirmed (*id.* at p. 854). We explained, "[a]lthough the body of law defining and applying principles of equitable indemnity has not fully gelled but is still evolving, one thing is clear: The doctrine applies only among defendants who are jointly and severally liable to the plaintiff. [Citation.] As plaintiff maintains, joint and several liability in the context of equitable indemnity is fairly expansive. . . . [¶] One factor is necessary, however. With limited exception, there must be some basis for tort liability against the proposed indemnitor. [Citation.] Generally, it is based on a duty owed to the underlying plaintiff [citations], although vicarious liability [citation] and strict liability [citation] also may sustain application of equitable indemnity. In addition, implied contractual indemnity between the indemnitor and the indemnitee can provide a basis for equitable indemnity. [Citation.] But neither vicarious or strict liability nor implied contractual indemnity are alleged or exist here. Thus, we are left with the requirement that defendants owed a duty to district." (*Id.* at p. 852.)

Our case does not involve vicarious liability, strict liability, or any form of contractual indemnity. As discussed above, there is no duty on a general negligence theory owed by Randle or Owen to the Weseloh plaintiffs. Therefore, Wessel's equitable indemnity claim fails. The trial court properly granted summary judgment as to this claim and denied Wessel's motion for new trial on this issue.

---

[6] We ordered the parties to be prepared to discuss at oral argument the impact of *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc., supra*, 119 Cal.App.4th 848 on this appeal. Counsel for the parties addressed the applicability of *BFGC Architects Planners, Inc.*, at oral argument, and agreed no further briefing was necessary.

## DISPOSITION

The judgment and postjudgment order are affirmed. Respondents to recover their costs on appeal.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

A petition for a rehearing was denied January 19, 2005, and the petition of appellants Weseloh Family Limited Partnership et al., for review by the Supreme Court was denied March 23, 2005.