Filed 1/8/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE READY MIX, INC., | 2d Civil No. B253421 |
| | (Super. Ct. No. 56-2012-00423313-CU-BC-VTA) |
| Cross-Complainant and Appellant, | (Ventura County) |
| v. | |
| MOFFATT & NICHOL, | |
| Cross-Defendant and Respondent. | |

Mixing concrete, like baking a cake, is fraught with problems when the recipe is not followed. Here, concrete supplier, State Ready Mix, Inc. (State), wrote the concrete mix design (the recipe) and prepared a bad batch of concrete that was used to construct a harbor pier. State blames the bad concrete on the civil engineer who drafted the pier plans and helped the general contractor by gratuitously reviewing State's concrete mix design. In the words of Clare Boothe Luce, "No good deed goes unpunished." (See *Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 348.)

When State was sued to recoup the cost of replacing the concrete, it filed a cross-complaint for equitable indemnity and contribution against the civil engineer, Moffatt & Nichol (Moffatt). The trial court sustained, without leave to amend, Moffatt's demurrer to the second amended cross-complaint. State appeals. We affirm and conclude the cross-complaint is barred by the economic loss rule. (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 643.) State cannot seek equitable indemnity or

contribution for damages caused by the breach of its own contract.  (*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1041-1044 (*Stop Loss*).)

*Facts and Procedural History*

In 2012, Bellingham Marine, Inc. (Bellingham), a marine project manager, hired Major Engineering Marine, Inc. (Major) to construct a travel lift pier at the Channel Islands Harbor.  Bellingham hired Moffatt, a civil engineering firm, to prepare the plans for the pier.  The plans required that the concrete have an air entrainment of two to four percent and that the concrete, when cured, attain a compressive strength of 5,000 PSI in 28 days.  Major's contract with Bellingham provided that if the concrete failed to meet the 5000 PSI compression strength standard, that it would be removed and replaced at Major's expense.

After Major hired State to supply the concrete, State submitted a concrete mix design (Mix Design SR5ORD) stating that Micro-Air (an air entrainment chemical) would be added to each batch of concrete.[1]    Moffatt, at the request of Major, reviewed and approved Mix Design SR5ORD   It was not part of Moffatt's job duties.

On February 14, 2012, State delivered seven truck loads of wet pre-mixed concrete to the project site.   After the concrete was cast, Major's testing lab took a sample that showed the concrete had a compressive strength of only 3,650 PSI at 28 days.

Major asked State to investigate.   In a March 9, 2012 email, State's technical advisor reported: "The day of the pour, 2-14-2012, State Ready Mix encountered a mechanical failure in their chemical dispensing equipment and had to manually add the 'Air Entrainment' chemical into the trucks. There was an error in the

---

[1] Mico-Air is an air-entraining admixture used to increase the concrete's workability. Too much entrained-air (micro air bubbles)  can significantly reduce the structural compressive strength of concrete.

2

calculations and the chemical was over dosed.  This is the reason for the lower compressive strengths."[2]   Major determined that the micro-air admixture was 6.5 times greater than the amount necessary to attain the air-entrainment specified in the plans.

Major demolished and rebuilt the affected portion of the pier.   It sued for the money spent to remove and replace the defective concrete based on contract and warranty theories.   State filed a cross-complaint for implied equitable indemnity and contribution, alleging that Moffatt failed to use reasonable care in reviewing and approving Mix Design SR5ORD.   After three pleading attempts, the trial court sustained Moffatt's demurrer without leave to amend because Moffatt was not in privity of contract with Major or State and because the cross-complaint was barred by the economic loss rule.

*Indemnification*

The trial court correctly ruled that State could not sue for equitable indemnity or contribution.  No facts are alleged that Moffatt owed State "a duty of care *sounding in tort.*" (*Stop Loss Ins., supra*, 143 Cal.App.4th, at p. 1041.)  Nor can State sue for equitable indemnification based on the theory that Moffatt negligently performed its contract with Bellingham.   (*Id*., at  pp. 1042-1043.)  "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty *independent of the contract* arising from principles of tort law.  [Citation.]  ' " ' An

---

[2] State argues that the email, which is a smoking gun, (see *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 524, fn. 4 [defining "smoking gun"] should not be considered because it is hearsay and lacks foundation.  The email is quoted in Major's complaint and attached to the complaint.   State's cross-complaint incorporates by reference Major's complaint which makes the email part of the pleading.  (See *Holly Sugar Corp. v. Johnson* (1941) 18 Cal.2d 218, 225-226; 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 434, pp. 567-568.)    If the allegations in State's cross- complaint are inconsistent with an incorporated writing, the written instrument controls.  (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.)

omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " ' [Citation.]" (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551, italics added.)

In *BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848 (*BFGC*), the project owner (a school district) sued its architect for breach of contract and professional negligence that caused $4 million in extra project costs. Architect filed a cross-complaint for equitable indemnity against the general contractors, alleging that they negligently failed to comply with the terms of their contracts with the school district. The Court of Appeal held that the no cognizable claim for equitable indemnity was stated. "The only allegations of defendants' misconduct are based on their alleged breach of contract . . . . This is an improper attempt to recast a breach of contract cause of action as a tort claim. Nor is there any social policy that would demand resort to tort remedies. Without any action sounding in tort, there is no basis for a finding of potential joint and several liability on the part of defendants, thereby precluding a claim for equitable indemnity." (*Id.*, at p. 853.)

The same principle applies here. State cannot recast Major's complaint for breach of contract/breach of warranty as a tort action. "A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." (*Aas v. Superior Court, supra,* 24 Cal.4th at p. 643 (*Aas*).) In *Aas,* homeowners sued the developer, contractor, and subcontractors in negligence for construct defects that caused no property damage. Our Supreme Court held that the economic loss rule precludes recovery for damages such as "the difference between price paid and value received, and deviations from standards of quality that have not resulted in property damage or personal injury." (*Id.*, at p. 636.)

"Simply stated, the economic loss rule provides: ' " '[W]hen a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions

4

involving the commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts' [Citation.]" (*Robinson Helicoper Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 988.)

Like *Aas*, the economic loss rule bars State's cross-complaint because Moffatt has no contractual relationship with State or Major and no facts are alleged that the concrete injured a person or damaged other property. (See e.g., *Fieldstone Co. v. Briggs Plumbing Products, Inc.* (1997) 54 Cal.App.4th 357, 367-368 [developer could not sue manufacturers of defective sinks for equitable indemnity or contribution; no privity of contract.)

*Implied Contract - Promissory Estoppel*

State argues that Moffatt, at Major's request, reviewed and approved the mix design which created an "implied contract" between Major and Moffatt. We address this theoretical claim even though it may be inapposite. [3] The concrete mix design (written by State who was a concrete designer and supplier) called for adding 32 times more Micro-Air than the manufacturer recommended, increasing the risk that the concrete would not achieve a 5000 PSI compressive strength. The second amended cross-complaint alleges that Moffatt should have known that using large amounts of the air-entrainment admixture would result in the loss of compressive strength. Invoking the doctrine of promissory estoppel, State argues that Moffatt "promised" the amount of Mico-Air in the concrete mix design would work.

A promissory estoppel claim generally entitles a plaintiff to the same damages available on a breach of contract claim. (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 231.) "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the

---

[3] As indicated (*Ante* at p. 3) State did not follow any mix-designed ratio. After its equipment malfunctioned, it manually added the chemical in a manner that was the antithesis of precision.

5

extent of the obligation assumed and not performed.' [Citation.]" (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692.)  Moffatt worked for the project general manager (Bellingham), not Major or State.  No facts are alleged that Moffatt made a "clear and unambiguous promise" (see *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044), that Major detrimentally relied on Moffatt's approval of the concrete mix design, or that Major's damages are related to an "obligation assumed" but not performed by Moffatt.  Even if Major's complaint is founded on an implied contract or promissory estoppel (of which State seeks equitable indemnification) the damages are to recoup the cost of replacing the concrete.  "Quite simply, the economic loss rule 'prevents the law of contract and the law of tort from dissolving one into the other.' [Citation.]" (*Robinson Helicopter Company, Inc. v. Dana Corporation, supra,* 34 Cal.4th at p. 988.)

*Special Relationship: Biakanja Factors To Impose Duty of Care*

Relying on *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), State argues that Moffatt owed a duty of care based on the following public policy factors: (1) the extent to which the transaction was intended to affect State; (2) the foreseeability of harm to State; (3) the degree of certainty that State suffered injury: (4) the closeness of the connection between Moffatt's conduct and the injury suffered; (5) the moral blame attached to Moffatt's conduct; and (6) the policy of preventing future harm.  Lack of privity of contract does not bar equitable indemnity if these factors favor imposition of a legal duty of care.  (See *Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc.* (2004) 125 Cal.App.4th 152, 165.)

The *Biakanja* argument fails on every factor. First, no facts are alleged that Moffatt's services were intended to affect or benefit State.   Moffatt agreed to help Major out and review the concrete design mix.  The service was gratuitous and intended to benefit project manager, Bellingham.  All the contractual duties allegedly assumed by Moffatt were intended to benefit Bellingham, not State or Major.  Moffatt's review and approval of Mix Design SR5ORD was not the cause of the bad concrete.

6

The second *Biakanja* factor, foreseeability of harm, is lacking. State alleges that Moffatt knew or should have known that the concrete would not meet the project specifications. But that is not why the concrete was nonconforming. State over-dosed the concrete with an air-entrainment chemical, causing the concrete to attain a low compression strength. When State delivered the wet concrete, no facts are alleged that Moffatt knew or should have known that the concrete would not attain a 5000 PSI compression strength.

The third *Biakanja* factor, certainty of injury, clearly weighs against imposition of a duty of care. State failed to test the wet concrete to assure that it complied with contract specifications. No facts are alleged that Moffatt knew or should have known that State deviated from the approved mix design.

The fourth *Biakanja* factor, the closeness of the connection between Moffatt's conduct and the injury suffered, is lacking. State had equipment problems and "guesstimated" the concrete mix without telling anyone. Lacking clairvoyant powers, Moffatt could not predict the structural soundness of the concrete before it cured.

The fifth factor, moral blame, is wanting. No facts are alleged that Moffatt controlled State's performance or controlled the contractual relationship between State and Major.

The final *Biakanja* factor, preventing future harm, does not support the imposition of a duty of care. Moffatt was not State's insurer or guardian angel. It did not warrant that the concrete, if over-dosed with the Micro-Air additive, would work. State could have protected itself by following the recipe (Mix Design SR5ORD), by keeping the chemical dispensing equipment in good working order, by hiring a quality control tester, or by negotiating protections in its contract with Major to minimize the risk of harm. (See e.g., *Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc., supra,* 125 Cal.App.4th at p. 172.)

7

*Good Samaritan - Negligent Undertaking*

State contends that Moffatt owed a duty to protect concrete suppliers based on the good Samaritan or negligent undertaking doctrine. (See *Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 607, discussing negligent undertaking theory articulated in Restatement Second of Torts, section 324A.) In the context of the presenting facts, this is a far-fetched theory. In *Artiglio v. Corning, Inc., supra* , the users of silicone gel breast implants sued Dow Chemical Company (Dow) for failure to report negative toxicology research on the dangers of silicone to breast implant manufacturers. Plaintiffs claimed that it was a "negligent undertaking" and rendered Dow liable in tort for plaintiffs' physical harm. The Supreme Court held that once a good Samaritan has performed his voluntary act, he is not required to continue to render aid indefinitely. (*Id.*, at pp. 617-618.)

Assuming that Moffatt's good Samaritan approval of the concrete mix design was a "negligent undertaking," Moffatt did not have a continuing duty to ensure that State follow the recipe and mix the concrete properly. State's negligent undertaking cases are inapposite and involve physical harm to a third party. (*Van Horn v. Watson* (2008) 45 Cal.4th 322 [good Samaritan injured plaintiff while removing her from car after an accident]; *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224 [bar owner who hired guard had a duty to protect patrons against foreseeable criminal acts of third parties].) Simply stated the concrete was hastily and erroneously mixed and delivered to the project site. After the concrete dried, it did not injure anyone or damage other property. The negligent undertaking theory of liability permits damages for personal injury or property damage, not economic losses.

*Conclusion*

State's appeal is premised on the theory that Moffatt had a duty to "sound the alarm" when State submitted a concrete mix design that increased the risk of making substandard concrete. State claims that the moral blame falls on Moffatt. If State wants to see who is at fault, it should look in the mirror. State failed to follow its

own concrete mix design.  Common sense compels the conclusion that State alone is responsible for the bad concrete.[4]

The judgment (order sustaining demurrer without leave to amend) is affirmed.  Moffatt is awarded costs on appeal.

CERTIFIED FOR PUBLICATION.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

---

[4] The cause of action for contribution also fails.  The right of contribution is a creature of statute (Code Civ. Proc., § 875) and comes into existence only after rendition of a judgment declaring more than one defendant jointly liable to the plaintiff.  (*Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1378.)  It arises where "one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment." (*Ibid.*)

9

Vincent J. O'Neal, Judge

Superior Court County of Ventura

_____

Patrick Au, Trang K. Le; Bremer, Whyte,Brown & O'Meara and Everett L. Skillman, for Cross-Complainant and Appellant.

Morris, Polich & Purdy, Jens B. Koepke, Theodore D. Levin and Raina L. Richter, for Cross-Defendant and Respondent.