[Civ. No. 49481. First Dist., Div. Two. Sept. 15, 1982.]

EAST HILTON DRIVE HOMEOWNERS' ASSOCIATION et al.,
Plaintiffs and Respondents, v.
WESTERN REAL ESTATE EXCHANGE, INC.,
Defendant and Appellant.

COUNSEL

Robert R. Cross, Nancy L. Powers and Broad, Khourie & Schulz for Defendant and Appellant.

Robert S. Sturges, Caputo, Liccardo, Rossi & Sturges and Caputo, Liccardo, Rossi, Sturges & McNeil for Plaintiffs and Respondents.

OPINION

**GIRARD, J.**[*]—T. J. Culligan, owner and developer of a tract of land in Santa Cruz, had a Mr. Kuehl build eight condominiums on that land, five of which are the subject of the instant litigation. A foreclosure resulted in the acquisition of the condominiums by the Bank of America. The condominiums were purchased from the Bank of America by appellant Western Real Estate Exchange, Inc. in late 1976 or early 1977, some four years after their construction. The condominiums were sold to their first occupants by Western, after repairing and rehabilitating them. Western also secured a certification from Kuehl that the buildings were constructed in accordance with the Building Code. Western found mildew in one of the garages, as well as several sacks of water sealer. After consulting with an engineer and county officials, Western excavated behind the buildings and built a drain field behind the foundation, after sealing the rear of the walls of four units (two buildings) with tar.

The condominiums were sold by Western to respondents in May and June of 1977. The units had been vacant from the date of their construction until they were purchased by respondents. At least one purchaser knew that they had lain vacant for some years. When the units were purchased, the

---

*Assigned by the Chairperson of the Judicial Council.

area had suffered a drought. During the rain of the latter part of 1977, the walkways sloping towards the buildings flooded. Water appeared in the garages. Sheetrock peeled off walls, mildew appeared, and carpets were destroyed.

Respondents expended some $6,500 to remedy the water problem. An additional amount of $19,400 is needed to reset surface goods and replace improperly installed concrete. Two of the respondents incurred damages because of rental losses and floor damage in an amount of $1,275.

Landscaping in an amount of $8,800, which appellant agreed to do, has not been done. Appellant concedes that this is a legitimate obligation.

The lower court found that appellant impliedly warranted to respondents that the homes they purchased were or would be constructed in a reasonably workmanlike manner and were reasonably fit for habitation. It then found that Western breached the implied warranty of fitness and assessed total damages of $34,555, with interest of $6,355 thereof until the date of judgment.

■ The Supreme Court in 1974 extended the doctrine of contractor's or builder's strict liability and implied warranty as pertaining to defective construction to the sellers of new construction. It specifically held that builders *and* sellers of *new* construction should be held to what is impliedly represented—that the completed structure was designed and constructed in a reasonably workmanlike manner. (*Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374 [115 Cal.Rptr. 648, 525 P.2d 88].)

The trial court relied on this case in reaching its conclusions. It found respondents to be the first users of the homes and it found that appellant, as successor in interest to the original developer, and as seller of new construction, had all the same warranty obligations that the original developer and builder would have had.

The *Pollard* case extended implied warranty liability to sellers of new construction only. The homes here, although not occupied before the sale to respondents, were built some four years before appellant acquired them. If they could be considered new construction when appellant acquired them, then the *Pollard* case would impose an implied warranty on that sale. But appellant who had no part in building or financing the building of these homes, cannot be considered a seller of new construction whether it occupied the homes or not. The *Pollard* case did not say a warranty would be implied for first occupants of buildings. It said the warranty would be implied for sellers and builders of new construction. Appellant Western

had no better way of knowing of any defects in construction than did respondents. Appellant is not a builder.

Appellant was a grantor of property in the meaning of Civil Code section 1113. The *Pollard* court noted that section 1113 did not require a different result in that case because *Pollard* dealt with a warranty of quality, not title. *Pollard* extended the warranty because builders and sellers of new construction are in a better position than buyers of new construction to know of defects. There is no reason to extend this warranty to appellant simply because the homes had lain vacant for a number of years.

Respondent urges that damages should be reassessed because of the passage of time. Code of Civil Procedure section 43 directs appellate courts to affirm, reverse or modify any judgment appealed from. There was no appeal by respondents from the trial court's assessment of damages. We find no authority for reassessing the award for landscaping, and none is cited by respondent.

The judgment is modified as follows: Plaintiff, East Hilton Drive Homeowners' Association, should recover judgment against defendant Western Real Estate Exchange, Inc., in the sum of $8,800 for landscaping plus interest at the legal rate.

Rouse, Acting P. J., and Smith, J. concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 10, 1982. Newman, J., did not participate therein.