Filed 2/19/14

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CYNTHIA BURCH, | B248830 |
| Petitioner, | (Los Angeles County Super. Ct. No. SC101002) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| PREMIER HOMES, LLC, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Gerald Rosenberg, Judge. Petition granted.

Best Best & Krieger, Victor L. Wolf, Scott W. Ditfurth and Kevin J. Abbott for Petitioner.

No appearance for Respondent.

Zimmerman & Kahanowitch and Brian F. Zimmerman for Real Parties in Interest.

Cynthia Burch challenges an order granting summary adjudication in favor of Premier Homes, LLC (Premier Homes), Custom Home Builders, Inc. (Custom Home Builders), Scott Warren, and Daniel Sahar in a construction defect action. The defendants argued that the Right to Repair Act (Civ. Code, § 895 et seq.) provides the exclusive remedy for a homeowner seeking damages for construction defects and precludes common law causes of action for negligence and breach of implied warranty. Custom Home Builders, Warren, and Sahar also argued that they owed Burch no duty of care and that they could not be liable for breach of implied warranty because they were not parties to any contract with her.

We hold that the Right to Repair Act does not provide the exclusive remedy for a homeowner seeking damages for construction defects that have resulted in property damage, as here. In addition, we also conclude that Custom Home Builders, Warren, and Sahar failed to negate a duty of care owed to Burch as a prospective purchaser and failed to negate an implied warranty in favor of Burch as a third party beneficiary of the construction contract. We therefore conclude that the court erred by summarily adjudicating the counts for negligence and breach of implied warranty in favor of the defendants.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Factual Background*

Custom Home Builders, a general contractor, built a single family residence in Pacific Palisades area of Los Angeles pursuant to a written construction contract with Premier Homes, the developer. The residence was not built specifically for Burch, but

2

instead was built to be marketed to the general public. After the construction was completed and the home was put on the market, Burch purchased it from Premier Homes pursuant to a written sales contract. Warren and Sahar are the principals and owners of both Custom Home Builders and Premier Homes.

2.    *Complaint*

Burch filed a complaint against Premier Homes, Custom Home Builders, Warren, Sahar, and others in December 2008. She filed a third amended complaint in August 2012. She alleged in her third amended complaint that the home suffered from numerous construction defects. She also alleged that Premier Homes and Custom Home Builders were the alter egos of the individual defendants. She alleged counts for (1) breach of the sales contract; (2) negligence; (3) breach of implied warranty; (4) unjust enrichment; (5) breach of contract/third party beneficiary; and other counts.

Burch alleged in her second count for negligence that the defendants breached their duty of care in connection with the construction, resulting in deficient construction. She specified several defects that allegedly have resulted in property damage. She alleged in her third count for breach of implied warranty that Premier Homes contracted with Custom Home Builders for the construction and that Custom Home Builders was aware that a party such as Burch would purchase the property. She alleged that the defendants impliedly represented to her, as a third party beneficiary, that they had used reasonable skill and judgment in the construction and alleged that they breached such implied warranty.

3

3.      *Summary Adjudication*

Custom Home Builders, Warren, and Sahar jointly moved for summary judgment or summary adjudication of several counts.  Premier Homes also separately moved for summary judgment or summary adjudication.  The defendants argued that the Right to Repair Act established a statutory action for violation of the standards set forth in the act as the exclusive remedy for damages for construction defects and abrogated common law claims for damages for construction defects.

Custom Home Builders, Warren, and Sahar also argued with respect to the negligence count that they had no contractual or other relationship with Burch and owed her no duty of care.  They argued, with respect to the count for breach of implied warranty, that they could not be liable for such a breach because they were not parties to any contract with Burch.  They also argued that an implied warranty could arise only in connection with the sale of goods and that they did not enter into a sales contract with Burch or sell her any goods and therefore could not be liable for breach of implied warranty.

The trial court granted summary adjudication in favor of Custom Home Builders, Warren, Sahar, and Premier Homes on the second count for negligence and third count for breach of implied warranty, among other counts.  At the hearing on the motions, the court cited Civil Code sections 896 and 943 in support of its ruling.  The court denied summary adjudication of the fifth count for breach of contract/third party beneficiary, stating in a minute order that there was "a triable issue whether Plaintiff is a third party beneficiary of the contract between Premier Homes and Custom Home Builders."

4

4.      *Petition for Writ of Mandate*

Burch petitioned this court for a writ of mandate in May 2013 challenging only the summary adjudication of the second and third counts. We issued an order to show cause.

5.      *Fourth Amended Complaint*

Meanwhile, Burch moved for leave to file a fourth amended complaint. The trial court granted the motion, and Burch filed a fourth amended complaint in September 2013 adding a new tenth count for damages pursuant to the Right to Repair Act. She alleges in the tenth count that the defendants breached their duty of care and caused defects that violate the standards set forth in Civil Code section 896 or are otherwise actionable pursuant to Civil Code section 897. She lists the same defects previously alleged in the second count for negligence and realleged in the fourth amended complaint in a negligence count against other defendants. She does not reallege the counts for negligence and breach of implied warranty against the defendants who successfully moved for summary adjudication of those counts.

## CONTENTIONS

Burch contends (1) the Right to Repair Act does not provide the exclusive remedy for damages for construction defects, and the trial court erred by summarily adjudicating her counts for negligence and breach of implied warranty on this basis; and (2) Custom Home Builders, Warren, and Sahar failed to negate the existence of a duty of care and an implied warranty.

5

## DISCUSSION

### 1. *Standard of Review*

"Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law. (Code Civ. Proc., § 437c, subd. (f)(1).) A defendant moving for summary adjudication of a cause of action must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant makes that initial showing, the burden then shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

"We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].) We must affirm a summary adjudication if it is correct on any ground that the parties have had an adequate opportunity to address on appeal, regardless of the trial court's stated reasons. (*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 754 [93 Cal.Rptr.3d 198]; *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698]; see Gov. Code, § 68081; Code Civ. Proc., § 437c, subd. (m)(2).)" (*Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 71.)

2.    *Mootness/Waiver*

Contrary to the defendants' argument, Burch's filing of a fourth amended complaint after the trial court's ruling did not render moot her challenge to the ruling. Burch has shown no intention of abandoning her counts for negligence and breach of implied warranty against the defendants and need not reallege those summarily adjudicated counts in each amended complaint in order to avoid a waiver. (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 44-45 [held that the plaintiff need not reallege in an amended complaint a count to which a demurrer had been sustained without leave to amend in order to challenge the ruling on appeal].)

3.    *The Right to Repair Act Does Not Preclude the Counts for Negligence and Breach of Implied Warranty*

The California Supreme Court in *Aas v. Superior Court* (2000) 24 Cal.4th 627, 647, 652-653 (*Aas*), held that deficiencies in residential construction were actionable in tort only if they caused property damage or personal injury. The Legislature enacted the Right to Repair Act in 2002 abrogating the holding in *Aas* by allowing the recovery of damages for specified defects resulting in only economic loss. (*Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98, 103-104 (*Liberty Mutual*); *Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1212.) The act sets forth construction standards the violation of which constitutes a deficiency in construction for which a "builder," as defined in the act, and to some extent a general contractor and others, can be held liable to a homeowner without the need to show

7

property damage or other injury.  (Civ. Code, §§ 896, 897, 942.)  The act also prescribes a nonadversarial prelitigation procedure for the parties to follow in an attempt to resolve the dispute, litigation procedures for claims under the act, and the measure of damages. (*Id.*, §§ 910-945.5.)

Civil Code section 896 states that in any action for damages arising out of or related to deficiencies in residential construction, a builder's liability, and to some extent the liability of a general contractor and others, is limited to liability for violation of the construction standards set forth in the Right to Repair Act, except as specifically stated in the act.  Civil Code section 944 prescribes the measure of damages for violation of the standards set forth in the act.  Civil Code section 943, subdivision (a) states, "Except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed.  In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute. . . . "  Civil Code section 897 specifically excepts from the limitation of liability under the act any defect that "causes damage."[1]

Thus, the Right to Repair Act abrogates the holding in *Aas*, *supra*, 24 Cal.4th 627, by providing a remedy for particular residential construction defects that cause no property damage.  The act, however, does not limit or preclude common law claims for

---

[1]     "The standards set forth in this chapter are intended to address every function or component of a structure.  To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."  (Civ. Code, § 897.)

damages for construction defects that have caused property damage. (*Liberty Mutual*, *supra*, 219 Cal.App.4th at p. 108.) *Liberty Mutual* examined the act and its legislative history and concluded that the act does not provide an exclusive remedy and does not limit or preclude common law claims for damages for construction defects that have caused property damage. (*Id*. at pp. 103-108.) We agree.

Burch alleged in her second count for negligence in her third amended complaint that the defendants breached their duty of care resulting in deficient construction, including but not limited to specified defects that caused property damage. She alleged in her third count for breach of implied warranty that the defendants breached an implied warranty with respect to the construction. Both counts allege common law claims for damages for construction defects, including defects allegedly resulting in property damage. We conclude that the Right to Repair Act does not preclude such common law claims and that the summary adjudication of the second and third counts on this basis was error.[2]

4.      *The Defendants Failed to Establish the Absence of a Duty of Care*

Custom Home Builders, Warren, and Sahar also argued in their motion for summary adjudication that they had no contractual or other relationship with Burch, owed her no duty of care, and therefore could not be liable for either negligence or breach of implied warranty. We first will address the negligence count.

---

[2]      The Right to Repair Act is expressly inapplicable to an action to enforce a contract. (Civ. Code, § 943, subd. (a).) In light of our conclusion, we need not decide whether an action for damages for breach of an implied warranty is an action to enforce a contract within the meaning of the statute.

9

The existence of a duty of care is an essential element of a negligence cause of action. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 (*Bily*).) Whether a duty of care exists in a particular case is a question of law for the court to decide. (*Ibid.*) The existence of a duty of care in the absence of privity of contract is a policy question that depends on the balancing of several factors, including "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to [the plaintiff], [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' " (*Ibid.*, quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*).)

*Bily* involved an action for professional negligence brought by investors against an accounting firm that had prepared an independent audit of a client's financial statements. (*Bily*, *supra*, 3 Cal.4th at pp. 377-379.) *Bily* focused on "three central concerns" with allowing "all merely foreseeable third party users of audit reports to sue the auditor on a theory of professional negligence" (*id.* at p. 398): (1) the auditor could face potential liability far out of proportion to its fault; (2) the class of plaintiffs in such an action, generally more sophisticated business lenders and investors, could control and adjust the risks by contract rather than rely on tort liability; and (3) potential liability to third parties would more likely result in an increase in the cost and decrease in the availability of audit services, rather than more careful audits. (*Id.* at pp. 398-406.) In light of these considerations, *Bily* held that an auditor's liability for negligence in

10

connection with performing an audit of a client's financial statements is limited to the client. (*Id.* at p. 406.)

*Biakanja*, *supra*, 49 Cal.2d 647, involved a negligence action against a notary public who prepared a will in which the plaintiff was named as the sole beneficiary. The will was denied probate because it lacked proper attestation. As a result, instead of receiving the entire estate under the will, the plaintiff received only one-eighth of the estate by intestate succession. (*Id.* at p. 648.) Applying the six factors listed above (*Biakanja* factors), *Biakanja* stated that the defendant must have been aware that the plaintiff would suffer a loss if the will were declared invalid, and the plaintiff would have received the entire estate but for the defendant's negligence. (*Id.* at pp. 650-651.) The defendant clearly was not qualified to draft a will and supervise its execution, and by doing so he had engaged in the unauthorized practice of law, a misdemeanor. (*Id.* at p. 651.) *Biakanja* concluded that the defendant owed the plaintiff a duty of care despite the lack of privity of contract. (*Ibid.*)

*Stewart v. Cox* (1961) 55 Cal.2d 857 applied the *Biakanja* factors in holding that a concrete subcontractor was liable to homeowners for the negligent construction of a swimming pool, despite the lack of privity of contract. (*Id.* at p. 863.) The plaintiffs had settled with the general contractor who agreed to construct the pool for them. (*Id.* at p. 860.) *Stewart* stated that the subcontractor's work was intended to benefit the plaintiffs as owners and that it was foreseeable that they would suffer property damage if the pool was not sound. There was no doubt that the plaintiff suffered serious damage caused by escaping water, and the trial court found based on ample evidence that the

11

injury resulted from the defendant's negligence. (*Id.* at p. 863.) *Stewart* concluded that the subcontractor "should not be exempted from liability if negligence on his part was the proximate cause of the damage to plaintiffs." (*Ibid.*)

*Sabella v. Wisler* (1963) 59 Cal.2d 21 held that a developer and contractor who built a home for the purpose of offering it for sale to the public was liable to the purchasers for negligent construction. (*Id.* at pp. 27-30.) The house was negligently constructed on insufficiently compacted filled land. (*Id.* at pp. 23-24.) Applying the *Biakanja* factors, *Sabella* stated that although the house was not built specifically for the plaintiffs, they were members of the class of prospective homebuyers for which the defendant built the house. (*Sabella*, *supra*, at p. 28.) "Thus as a matter of legal effect the home may be considered to have been intended for the plaintiffs, and Wisler owed them a duty of care in construction. [Citation.]" (*Ibid.*) The harm to prospective homebuyers was foreseeable, it was undisputed that the house was seriously damaged, and there was a close connection between the defendant's negligence and the injury suffered. (*Ibid.*) "Finally, the prevention of future negligent construction of buildings upon insufficiently supportive material would not be furthered by exempting defendant Wisler from liability for his negligence. [Citations.]" (*Id.* at p. 29.)

Custom Home Builders, Warren, and Sahar as the parties moving for summary adjudication had the initial burden to present evidence showing that Burch could not establish an element of her negligence count. In our view, the evidence presented in support of their motion fails to show that Burch cannot establish a duty of care, and instead tends to show that a duty of care existed. As in *Sabella v. Wisler*, *supra*,

59 Cal.2d at page 28, Burch is a member of a class of prospective homebuyers for which the defendants performed the construction, so in legal effect the construction may be considered to have been intended for her.[3] It was foreseeable that a prospective owner would suffer harm if the construction was deficient, and the defendants have presented no evidence showing that the harm to Burch is uncertain. There is a close causal connection between the defendants' construction of the property as the general contractor and any construction deficiencies and resulting damage. Finally, the policy of preventing future harm from deficient construction would not be served if the general contractor were excused from liability to the prospective owner for its alleged negligence.[4] (*Sabella*, *supra*, at pp. 28-29; *Stewart v. Cox*, *supra*, 55 Cal.2d at p. 863.)

*Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc.* (2004) 125 Cal.App.4th 152 (*Weseloh*), cited by the defendants, is distinguishable. That case involved the construction of facilities for an automobile dealership. The defendants were engineers who designed retaining walls for a subcontractor on the project and were not otherwise involved in the construction. After the retaining walls failed, the owners and the general contractor sued the design engineers for negligence. The trial court granted summary judgment in favor of the design engineers. (*Id.* at pp. 158-160.)

---

[3] Custom Home Builders, Warren, and Sahar did not challenge the alter ego allegations in their motion for summary adjudication and have not shown that the individual defendants should be regarded as any different from Custom Home Builders, the general contractor on the project.

[4] The evidence in the record does not suggest that the defendants' conduct was morally blameworthy apart any moral blame encompassed in the other factors.

*Weseloh* stated that the design engineers satisfied their initial burden on the summary judgment motion to negate the existence of a duty of care by presenting evidence that they had no contractual privity with either the owners or the general contractor and only performed professional design services for a subcontractor. The burden on the motion therefore shifted to the owners and the general contractor. (*Id.* at p. 164.)

Considering the *Biakanja* factors and the concerns cited in *Bily*, *supra*, 3 Cal.4th at pages 398-406, *Weseloh* concluded that the design engineers owed no duty of care to either the owners or the general contractor. (*Weseloh*, *supra*, 125 Cal.App.4th at pp. 166-173). As in *Bily*, *Weseloh* noted the prospect of the design engineers' liability far out of proportion to their fault, the sophistication of the owners and the general contractor and their ability to control and adjust the risks by contract rather than rely on tort liability, and their failure to show any benefit from imposing liability to third parties on a provider of professional services in those circumstances. (*Weseloh*, *supra*, at pp. 170-172.) *Weseloh* stated that the owner could pursue a claim for damages against the general contractor and the general contractor could pursue a claim for damages against the subcontractor. (*Id.* at p. 170.) *Weseloh* also noted the absence of evidence that the design engineers' design was used without alteration and the absence of evidence of causation in general. (*Id.* at pp. 168-169.)

Here, in contrast, Custom Home Builders was the general contractor on the project responsible for the overall construction, rather than a provider of professional services to a subcontractor, and the defendants have not challenged the element of causation. The concerns cited in *Bily*, *supra*, 3 Cal.4th at pages 398-406, do not apply

14

here.  We therefore hold that *Weseloh*, *supra*, 125 Cal.App.4th 152, does not support the absence of a duty of care in these circumstances.

Our consideration of the *Biakanja* factors causes us to conclude that the defendants failed to establish the absence of a duty of care.  Instead, the evidence in the present record supports the existence of a duty of care.  The summary adjudication of the negligence count in favor of Custom Home Builders, Warren, and Sahar cannot be upheld based on the absence of a duty of care.

5.  *The Defendants Failed to Negate a Breach of Implied Warranty*

Burch alleged in her third amended complaint that she was a third party beneficiary of the construction contract between Premier Homes and Custom Home Builders and that the defendants impliedly represented that Custom Home Builders used reasonable skill and judgment in the construction.

*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 376, 379-380 (*Pollard*), held that there is implied in a sales contract for newly constructed real property a warranty of quality and fitness.  *Pollard* stated, "the builder or seller of new construction—not unlike the manufacturer or merchandiser of personalty—makes implied representations, ordinarily indispensable to the sale, that the builder has used reasonable skill and judgment in constructing the building." (*Id.* at p. 379.)  *Pollard* stated further, "we conclude builders and sellers of new construction should be held to what is impliedly represented—that the completed structure was designed and constructed in a reasonably workmanlike manner." (*Id.* at p. 380.)  *Pollard* noted that a similar implied warranty in construction contracts protects the owner from defective

15

construction and stated, "it would be anomalous to imply a warranty of quality when construction is pursuant to a contract with the owner—but fail to recognize a similar warranty when the sale follows completion of construction." (*Id.* at pp. 378-379.)

The plaintiffs in *Pollard*, *supra*, 12 Cal.3d 374, purchased the property from the defendant developers and were not parties to the construction contracts between the developers and a general contractor, who was not a party to the litigation. (*Id.* at p. 376.) *Pollard* held that the developers, as sellers of newly constructed real property, could be held liable for breach of an implied warranty of quality and fitness, but that the action was barred because the plaintiffs failed to notify the defendants of the defects within a reasonable period of time after discovering the defects. (*Id.* at p. 380.) Although *Pollard* stated that an implied warranty of quality and fitness applies to builders and sellers of new construction, the case involved only the developers as sellers. *Pollard* therefore did not suggest that an implied warranty ran from the general contractor to the plaintiffs, with whom the general contractor had no contractual relationship. *East Hilton Drive Homeowners' Assn. v Western Real Estate Exchange, Inc.* (1982) 136 Cal.App.3d 630, 632-633, cited by Burch, similarly involved sales by the defendants to the plaintiffs, and did not suggest that an implied warranty could arise absent privity of contract.

An implied warranty arises in a contract and therefore generally cannot arise without a contract between the plaintiff and the defendant. "The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent

16

purchaser who is in no way a party to the original sale. [Citations.]" (*Burr v. Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695 [noting exceptions that are inapplicable here].) " 'It is settled law in California that privity between the parties is a necessary element to recovery on a breach of an implied warranty of fitness for the buyer's use, with exceptions not applicable here. [Citation.]' [Citation.]" (*Huang v. Garner* (1984) 157 Cal.App.3d 404, 419, disapproved on another ground in *Aas supra,* 24 Cal.4th at p. 649.)

*Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal.App.3d 65 held that a real property owner could maintain a cause of action against a subcontractor for breach of an implied warranty of quality and fitness despite the lack of a contract between the owner and the subcontractor. *Gilbert* concluded that, in the circumstances of that case, the owner was an intended beneficiary of the contract between the general contractor and the subcontractor. (*Id.* at pp. 69-70.) *Gilbert* recognized an exception to the general rule that an implied warranty can arise only in favor of a party to the contract.

The trial court here granted summary adjudication in favor of the defendants on the second count for negligence and third count for breach of implied warranty based on the Right to Repair Act. The court did not conclude that Burch was not an intended beneficiary of the construction contract and summarily adjudicate the third count for breach of implied warranty on that basis. Instead, the court concluded that there was a triable issue of fact as to whether Burch was an intended beneficiary of the construction contract, and therefore denied summary adjudication of the fifth count for

17

breach of contract/third party beneficiary. The defendants do not challenge the court's determination that a triable issue of fact exists, have shown no error in that determination, and therefore are not entitled to summary adjudication of the third count for breach of implied warranty.

## *DISPOSITION*

The petition for writ of mandate is granted, and the trial court is directed to vacate its order granting the motion for summary adjudication as to the second count for negligence and third count for breach of implied warranty and enter a new order denying the motion on those counts. The operative complaint shall be deemed amended to include those two counts. Burch is entitled to recover her costs in these appellate proceedings.


*CERTIFIED FOR PUBLICATION*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

KITCHING, J.