Filed 1/3/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| STEPHEN LEMM, | B312232 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV21322) |
| v. | |
| ECOLAB INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Affirmed.

Hathaway, Perrett, Webster, Powers, Chrisman & Gutierrez, The Hathaway Law Firm and Alejandro P. Gutierrez; Palay Hefelfinger, Daniel J. Palay and Brian D. Hefelfinger for Plaintiff and Appellant.

Jones Day, Kelsey A. Israel-Trummel, Michael J. Gray and Ann-Marie Woods for Defendant and Respondent.

_____

Stephen Lemm appeals from a judgment in favor of his employer, Ecolab, Inc. Lemm sued Ecolab under the Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.) alleging Ecolab improperly calculated the overtime due on a nondiscretionary bonus paid to Lemm and other similarly situated employees. Ecolab successfully moved for summary judgment on the ground its formulation of the overtime payment comported with the Fair Labor Standards Act of 1938 (FLSA). On appeal, Lemm argues California authorities require a different method of calculation and supersede federal authority in this instance because California provides greater protection to employees like him. We affirm.

## FACTS

After working for Ecolab for several years, Lemm became a route sales manager for the company beginning April 5, 2018. Ecolab provides to its customers, among other things, sanitation and pest control services and supplies, commercial kitchen equipment and appliance maintenance, and food safety services. As a route sales manager, Lemm was Ecolab's primary contact with certain customers. He visited these customers regularly to install, repair, and maintain Ecolab equipment, provide ongoing training and customer service, and sell Ecolab products and parts.

## 1. Compensation for Route Sales Managers

Route sales managers are nonexempt employees who are entitled to overtime compensation. Lemm regularly worked more than 12 hours a day and more than 40 hours a week in 2018 and 2019.

Lemm's compensation was calculated pursuant to an annual Incentive Compensation Plan. Under the plan, his

compensation was comprised of hourly wages and a nondiscretionary monthly bonus. The method of calculating the nondiscretionary bonus is at the heart of this appeal.

Lemm's hourly wages, including any overtime or double time wages, were paid every two weeks. The overtime and double time hours were determined by state and federal guidelines and are not in dispute to the extent those hours do not comprise part of the calculation of the monthly bonus.

The monthly bonus is nondiscretionary, meaning the employee is entitled to it under his or her compensation package whenever the employee meets target metrics. We describe the target metrics below. Although the bonus is nondiscretionary, the actual amount of the bonus may vary from month to month based on the factors that are considered in the calculation of the bonus pursuant to the employee's compensation plan. Unlike regular wages, the monthly bonus is paid every four to six weeks pursuant to a schedule set out in the Incentive Compensation Plan. For 2018 and 2019, the period at issue, Lemm's Incentive Compensation Plan described the monthly bonus as follows:

> "A monthly bonus is calculated on the following payout factors, based on net sales after distributor sales adjustments and product returns:
> - Territory Sales Budget Achievement
> - Service Detail Reporting with Observations
>
> "Monthly bonus is earned after completion of the following:
> - Direct sales are billed by the credit department
> - Receipt of reporting from the Distributor Sales
> - Items sold or shipped to the customer have not been returned within three (3) months of the initial order (see Policy – Returns)

- Calculation and approval of the bonus advance by the Company"

Under the plan's terms, the monthly bonus depends on Lemm meeting or exceeding the two target metrics – sometimes referred to as "payout factors" – which we list above in the indented portion of the text: (1) Territory Sales Budget Achievement and (2) Service Detail Reporting with Observations. The "Territory Sales Budget Achievement" factor depended on Lemm achieving at least 80 percent of his territory sales budget. If he met this goal, his gross wages for the month were increased by at least 22.5 percent. The greater his sales, the greater the percentage multiplier.

The "Service Detail Reporting with Observations" factor depended on Lemm completing a report on at least 90 percent of his regular customer calls. The service detail report documented Lemm's efforts to sell Ecolab services and products each time he visited a customer. If he met this goal, his gross wages for the month were increased by an additional 5 percent. Unlike the Territory Sales Budget Achievement factor, this percentage did not change even if Lemm completed reports on more than 90 percent of his regular customer calls.

Under Ecolab's calculation, gross wages for the purpose of calculating the bonus included straight time, overtime, and double time wages.

### 2. The Lawsuit

On March 25, 2019, Lemm served a PAGA notice of various Labor Code violations on the Labor and Workforce Development

4

Agency (the agency) and Ecolab. The agency did not take action on Lemm's claim, allowing Lemm to file suit against Ecolab.[1]

On June 19, 2019, Lemm brought his representative PAGA suit, alleging he and other Ecolab route sales managers failed to receive the proper overtime rate as part of the nondiscretionary monthly bonus. Lemm did not assert an individual cause of action.

On July 25, 2019, Ecolab answered and denied Lemm's allegations. About two months later, on October 2, 2019, Lemm served an amended PAGA notice on the agency, asserting additional claims for "civil penalties associated with the failure of Ecolab to pay all required wages, including reporting time and split shift wages, during the employment."

The parties stipulated to the filing of cross-summary adjudication motions to resolve how overtime rates are treated in the calculation of the monthly bonus. The parties agreed the summary adjudication motions would not resolve the issues raised by Lemm's amended PAGA notice seeking penalties for reporting time and split shift wages. Ecolab took the position that Lemm's amended PAGA filing was not adequately or timely asserted but agreed it would be more efficient to decide the overtime issue first. The trial court granted the parties' request and agreed to adjudicate whether "the manner in which Ecolab

---

[1] PAGA requires that an employee give written notice of an alleged Labor Code violation to both to the agency and the employer. (§ 2699.3, subd. (a)(1); *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81.) If the agency does not investigate, does not issue a citation, or fails to respond within a specified time, the employee may assert PAGA claims as a representative of the state. (§ 2699.3, subd. (a)(2); *LaFace v. Ralphs Grocery Co.* (2022) 75 Cal.App.5th 388, 394.)

calculated and paid Plaintiff his Monthly Bonuses [was] a lawful method to calculate and pay overtime and double time compensation owed on the Monthly Bonuses under California law."

### 3.     *Summary Adjudication*

In their cross-motions for summary adjudication, the parties did not dispute that overtime and double time compensation was due on the nondiscretionary bonus.  They differed on which method to use to calculate the overtime due on the bonus.

In his motion for summary adjudication, Lemm argued that under California law, nondiscretionary bonus payments must be incorporated into the regular rate of pay, which in turn would affect any overtime calculations.  Lemm relied on the formula presented in section 49.2.4 (section 49.2.4) of the Division of Labor Standards Enforcement Manual (DLSE Manual) for his formulation.  We set out the formula below.[2]  Lemm argued the California Supreme Court opinion in *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542 (*Alvarado*) compelled the court to adopt section 49.2.4's formula because it was more favorable to employees.

Ecolab relied on federal law, specifically 29 C.F.R. section 778.210 (CFR 778.210), for its method of calculating the overtime

---

[2]     The most recent version of the DLSE Manual is published online.  (See DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (Revised) (August 2019) <http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf> [as of December 27, 2022] archived at <https://perma.cc/8L59-V5U7>.)  Revisions to the DLSE Manual in 2017 and 2019 do not affect our analysis.

6

due on the monthly bonus.  It argued CFR 778.210 applies to what are known as percentage bonuses, which are paid as a percentage of gross earnings that have already incorporated straight time, overtime, and double time wages for each bonus period.

The trial court granted Ecolab's motion and denied Lemm's, finding *Alvarado's* holding was limited to flat sum attendance bonuses, not percentage bonuses, and federal law was not at odds with California authorities.  It explained, "Ultimately, [Ecolab's] position makes logical sense.  Simply put, a requirement for an employer to pay overtime on a percentage bonus that already includes overtime pay makes the employer pay 'overtime on overtime.'  This is not a requirement under the law.  By paying a bonus based on a percentage of gross earnings that includes overtime payments the employer automatically pays overtime simultaneously on the bonus amount.  (*Russell* [*v. Government Employees Ins. Co.* (9th Cir. 2019)] 787 Fed. Appx [953,] 954 [a percentage of total earnings bonus 'serves as both a bonus and a simultaneous payment of overtime compensation due on the bonus'].)"

### 4.    *Judgment on the Pleadings*

After the trial court's summary adjudication ruling, Ecolab filed a motion for judgment on the pleadings on Lemm's amended PAGA claim for reporting time and split shift wage violations.  Ecolab pointed out that Lemm's complaint did not include these particular Labor Code violations.  More significantly, Lemm could not amend his complaint to include the new PAGA claims because he had failed to exhaust his administrative remedies,

having served the amended PAGA notice on the agency after the lawsuit had already been filed.[3]

Lemm opposed the motion for judgment on the pleadings. He asserted the allegations in his complaint encompassed the same Labor Code violations as asserted in the amended PAGA notice since the complaint generally alleged a failure to pay wages owed. Further, Ecolab was on notice of the reporting time and split shift wage violations. Lemm alternatively sought to amend the complaint to include reporting time and split shift violations.

The trial court granted judgment on the pleadings, finding the complaint was devoid of facts sufficient to state causes of action for reporting time and split shift wage violations. It further denied Lemm leave to amend the complaint, concluding that allowing Lemm to amend the complaint would defeat the exhaustion of administrative remedies requirement of Labor Code section 2699.3, subdivision (a).

Lemm appealed from the judgment entered in favor of Ecolab.

### DISCUSSION

On appeal, Lemm contends the method by which Ecolab calculated overtime and double time compensation owed on the monthly bonuses failed to comport with California law. Relatedly, he contends the trial court prejudicially erred in relying on federal law to analyze his state law employment claims. We affirm the trial court's ruling on summary adjudication.

---

[3] Lemm's complaint was filed June 19, 2019, while the amended PAGA claim was served on the agency on October 2, 2019.

Lemm also challenges the trial court's rulings on the motion for judgment on the pleadings and request to amend the pleadings.  We find these issues are moot.

## A.

### *NONDISCRETIONARY BONUS CLAIM*

### 1.    *Standard of Review for Summary Adjudication*

"We review the grant of summary adjudication de novo." (*King v. Wu* (2013) 218 Cal.App.4th 1211, 1213.)  "In performing this de novo review, we view the evidence in the light most favorable to the opposing party and strictly construe the evidence of the moving party, and resolve any evidentiary doubts in favor of the opposing party." (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 574.)  " 'Summary adjudication of a cause of action is appropriate only if there is no triable issue of material fact as to that cause of action and the moving party is entitled to judgment on the cause of action as a matter of law.' " (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1416, overruled on another point in *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 258; Code Civ. Proc., § 437c, subd. (f)(1).)  "There is a triable issue of material fact if, and only if, the evidence [and reasonable inferences drawn from the evidence] would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In general, the moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima

9

facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar, supra,* 25 Cal.4th at pp. 850–851, fns. omitted.)

## 2. *Governing Wage Statutes, Regulations, and Cases*

While payment of overtime compensation in California is governed by both federal and state law, "[i]t is well settled that federal law does not preempt state law in this area, and therefore state law is controlling to the extent it is more protective of workers than federal law." (*Alvarado, supra,* 4 Cal.5th at p. 554; see also 29 U.S.C. § 218(a).) Nevertheless, "[b]ecause the California wage and hour laws are modeled to some extent on federal law, federal cases may provide persuasive guidance." (*Nordquist v. McGraw-Hill Broad. Co.* (1995) 32 Cal.App.4th 555, 562.) We begin by examining the applicable state and federal law on overtime compensation.

### a. State Authorities

In California, "wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC [Industrial Welfare Commission]." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026.) " 'When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. . . . Time and again, we have characterized that purpose as the protection of employees — particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. . . . In furtherance of that purpose, we liberally construe the Labor

10

Code and wage orders to favor the protection of employees.' " (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839 (*Troester*), citations omitted.)

Labor Code section 510 and IWC Wage Order No. 5 require an employer to pay an overtime premium of 1.5 times the regular rate of pay for work in excess of eight hours in a day, 40 hours in a week, or for the first eight hours worked on the seventh consecutive day of work. An employer is obligated to pay twice the regular rate of pay (double time) for any work in excess of 12 hours in one day. (Lab. Code, § 510, subd. (a); see IWC Wage Order No. 5, §§ 2(P)(1), 3(A)(1)(a)-(b).)

The DLSE is the state agency charged with enforcing labor laws and regulations. (Lab. Code, §§ 21, 61, 95, 98 et seq., 1193.5.) To that end, it has compiled a series of policy manuals interpreting California's labor laws. (*Alvarado, supra,* 4 Cal.5th at pp. 554–555.) The appellate courts consider the DLSE Manual "to the extent we find it persuasive." (*Alvarado*, at p. 567.)

Section 49 of the DLSE Manual describes and explains the methods for computing regular rate of pay and overtime. An employee's "regular rate of pay" for purposes of Labor Code section 510 and the IWC wage orders is not the same as the employee's straight time rate (i.e., his or her normal hourly wage rate). Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned. (*Alvarado, supra,* 4 Cal.5th at p. 554.)

Pertinent to this case, section 49.2.4 of the manual explains "Computing Regular Rate and Overtime on a Bonus" as follows:

11

"When a bonus is based on a percentage of production[4] or some formula other than a flat amount and can be computed and paid with the wages for the pay period to which the bonus is applicable, overtime on the bonus must be paid at the same time as the other earnings for the week, or no later than the payday for the next regular payroll period.  (See Lab. Code, § 204.)  Since the bonus was earned during straight time as well as overtime hours, the overtime 'premium' on the bonus is half-time or full-time (for double time hours) on the regular bonus rate.  The regular bonus rate is found by dividing the bonus by the total hours worked during the period to which the bonus applies.  The total hours worked for this purpose will be all hours, including overtime hours.  (See previous section)"

To calculate overtime compensation on a bonus described in section 49.2.4, "[f]irst, find the overtime due on the regular hourly rate. . . .  Then, separately, compute overtime due on the bonus:  find the regular bonus rate by dividing the bonus by the total hours worked throughout the period in which the bonus was earned.  The employee will be entitled to an additional half of the regular bonus rate for each time and one-half hour worked and to an additional full amount of the bonus rate for each double time hour, if any."  (DLSE Manual, § 49.2.4.1.)  The DLSE Manual includes the following example to illustrate this formula:

Regular hourly rate of pay…………………………………….$ 20.00
Total hours worked in workweek = 52
Total overtime hours at time and one-half = 12
Overtime due on regular hourly rate = 12 x $30.00……$360.00
Bonus attributable to the workweek……………………..$138.00

---

[4]      Ecolab's Incentive Compensation Plan contained a percentage formula.

Regular bonus rate = $138.00 \div 52 = \$2.6538 \div 2 = \$1.33$

$1.33 x 12 Overtime Hours[5]………………..……$ 15.92[6]

Total earnings due for the workweek:

Straight time:  40 hours @ $20.00………………………$800.00

Overtime:  12 hours @ 30.00……………………………. $360.00

Bonus….……………………………………………………$138.00

Overtime on bonus ….…………………………………… $ 15.92

Total……………………………………………………….$1,313.92

### b.    Federal Authorities

The FLSA requires an employer to pay overtime compensation at 1.5 times an employee's "regular rate" of pay when an employee works over 40 hours in one week.  (29 U.S.C. § 207(a)(1).)  The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" unless it falls under one of eight statutory exceptions.  (29 U.S.C. § 207(e).)  "Among these excludable payments are discretionary bonuses . . .  Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."  (29 C.F.R. § 778.208.)  "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation.  No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period.

---

**5**    In the DLSE hypothetical, the employee worked 52 hours; thus, 12 hours qualified for overtime.

**6**    $15.92 is the overtime on the bonus.

13

The amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by total hours worked." When the calculation of a bonus is deferred over a longer period of time, the employer "may pay compensation for overtime at one and one-half times the hourly rate paid by the employee, exclusive of the bonus. When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week." (29 C.F.R. § 778.209.)

"In some instances, the contract or plan for the payment of a bonus may also provide for the simultaneous payment of overtime compensation due on the bonus. For example, a contract made prior to the performance of services may provide for the payment of additional compensation in the way of a bonus at the rate of 10 percent of the employee's straight-time earnings, and 10 percent of his overtime earnings. In such instances, of course, payments according to the contract will satisfy in full the overtime provisions of the [FLSA] and no recomputation will be required. This is not true, however, where this form of payment is used as a device to evade the overtime requirements of the Act rather than to provide actual overtime compensation, as described in [sections] 778.502 and 778.503." (CFR 778.210.)

The above CFR 778.210 example is a "percentage-based bonus" scheme of the type used by Ecolab. (*Barragan v. Home Depot U.S.A., Inc.* (S.D. Cal. Aug. 17, 2021 No.

14

319CV01766AJBAGS) 2021 WL 3634851, at p. *6.) "[P]ercentage bonuses are only tolerated because they are mathematically equivalent to recomputing the bonus into the employee's regular rate." (*Weninger v. Gen. Mills Operations LLC* (E.D.Wis. 2018) 344 F.Supp. 3d 1005, 1010; accord *Hornady v. Outokumpu Stainless USA* (S.D.Ala. Feb. 17, 2022, No. CV 1:18-00317-JB-N) 2022 WL 495186, at p. *10.)

In *Russell v. Gov't Emps. Ins. Co.* (9th Cir. 2019) 787 Fed.Appx. 953, 954, the plaintiff employee relied on 29 C.F.R section 778.209 to argue her employer was required to retroactively allocate her annual cash payment bonus over the calendar year, recompute her regular rate of pay for the workweeks covered, and make a supplemental overtime payment on the bonus. The district court found no recomputation was required because the employer's formulation fell under CFR 778.210. The Ninth Circuit agreed. It concluded the employer's payment of a bonus based on percentage of total earnings, which included both regular wages and overtime earnings, comported with federal and California law. (*Ibid.*)[7]

---

[7] See also *Brock v. Two R Drilling Co. Inc.* (5th Cir. 1986) 789 F.2d 1177, 1180 (a percentage bonus "increases both straight time and overtime wages by the same percentage, which is the rationale for the percentage bonus rule as stated in section 778.503" (internal quotations omitted)); *Siomkin v. Fairchild Camera & Instrument Corp.* (2d Cir. 1949) 174 F.2d 289, 292–294 ("A percentage paid upon current earnings . . . has the same effect . . . as though it was added to each unit of pay, the unit and a half earned for overtime as well as the unit earned for straight time; and it ought to be deemed the equivalent of an increment to each of the units for current work."); *Chavez v. Converse, Inc.* (N.D. Cal. Aug. 18, 2016) No. 15-cv-03746) 2016 WL 4398374, at

15

### 3. *Analysis*

CFR 778.210 addresses the precise issue presented in this case. The terms of Lemm's Incentive Compensation Plan expressly provide for the simultaneous payment of overtime compensation due on the monthly bonus by way of a percentage increase to his straight time *and* overtime earnings. Under CFR 778.210, these simultaneous payments satisfy in full the overtime provisions of the FLSA. The Ninth Circuit and the California District Courts agree that the type of calculation that Ecolab uses for overtime due on the monthly bonus is proper under federal and California authorities. (*Russell v. Gov't Emps. Ins. Co., supra,* 787 Fed.Appx. at p. 954; *Chavez v. Converse, Inc., supra,* 2016 WL 4398374, at p. *1; *Pytelewski v. COSTCO, supra,* 2010 WL 11442902, at p. *4.) We find these authorities persuasive.

Lemm urges us to disregard CFR 778.210 and the federal courts that have applied it in California wage and hour cases. Acknowledging that "Labor Code section 510 and Wage Order No. 5 do not explicitly state how overtime should be calculated under the facts of this case," Lemm relies on section 49.2.4 for a formula that results in an additional amount of overtime compensation due on the monthly bonus. According to Lemm, this additional overtime compensation affirmatively shows that California law provides greater protection to similarly situated employees and Ecolab is bound to follow it.

Lemm provided this example of the section 49.2.4 formula based his actual earnings for the week of March 3 through 9, 2019.

---

page *1 (same); *Pytelewski v. COSTCO* (S.D. Cal. Nov. 3, 2010) No. 09-CV-2473-H (BLM)) 2010 WL 11442902, at page *4 (same).

16

Regular hourly rate of pay…………………………..…..$ 14.84

Total hours worked in workweek = 53.50

Total overtime hours at time and one-half = 13.50

Overtime due on regular hourly rate = 13.5 x $22.26….$300.51

Bonus attributable to the workweek……………………..$468.87

Regular bonus rate = $468.87 ÷ 53.5 = $8.7639 ÷ 2 =
    $4.3820 x 13.5 Overtime Hours……………………..……$ 59.16

Total earnings due for the workweek:

Straight time:  40 hours @ $14.84………………….…..…$593.60

Overtime:  13.5 hours @ $22.26…………………………...$300.51

Bonus…….……………………………………………………..$468.87

Overtime on bonus …….…………………………………..$  59.16

Total…………………………………………………………$1,422.14

Lemm contends this was the proper method to calculate his wages and that the wages he was actually paid for this period, totaling $1,362.98, were incorrectly calculated.  The difference between the compensation he actually received ($1,362.98) and what he claims was due under the DLSE section 49.2.4 formulation is $59.16, the amount of "overtime on bonus."

We conclude the $59.16 amount for overtime on bonus that Lemm claims is due him represents a double counting of "overtime on overtime."  This is because the $468.87 bonus attributed to that period under Lemm's table already includes overtime pay.

Ecolab determined the bonus this way using Lemm's compensation for the same week (March 3 through 9, 2019):

| Type of Wage | Wages | Hours Worked | Bonus Payout Percentage[8] | Bonus Amount |
|---|---|---|---|---|
| Straight Time | $593.60 | 40 | 52.44% | $311.28 |
| Overtime | $300.51 | 13.5 | 52.44% | $157.59 |
| **Total** | **$894.11** | **53.5** | **52.44%** | **$468.87** |

By Ecolab's calculation using the method described in CFR 778.210, Lemm was owed and was paid $1,362.98 ($894.11 [wages] + $468.87 [bonus]) in total compensation. Ecolab's expert testified that Lemm would have been owed $1,362.98, the same amount he was paid, for the week of March 3 through 9, 2019 using the formula in section 49.2.4.1 if the "bonus attributable to the workweek" excluded the overtime on overtime double counting.

Ecolab's expert calculated Lemm's wages for the week this way:

Regular hourly rate of pay………………………….………$ 14.84

Total hours worked in workweek = 53.50

Total overtime hours at time and one-half = 13.50

Overtime due on regular hourly rate = 13.5 x $22.26….$300.51

Bonus attributable to the workweek………………….…..$416.34

Regular bonus rate = $416.34 ÷ 53.5 = $7.7820 ÷ 2 =
$3.89 x 13.5 Overtime Hours………………….………$ 52.53

---

[8]    Lemm's bonus payout percentage reflected the fact that he exceeded his Territory Sales Budget Achievement goal of 80 percent.

Total earnings due for the workweek:

Straight time:  40 hours @ $14.84……………………...…..$593.60

Overtime:  13.5 hours @ $22.26…………………………...…..$300.51

Bonus……………………………………………………………..$416.34

Overtime on bonus ……..………………………………….…..$   52.53

Total……………………………………………………………..$1,362.98

The primary difference between Lemm's calculation and Ecolab's is the amount each assigns to "bonus attributable to the workweek."  Under Lemm's application of section 49.2.4, the bonus attributable to the workweek is $468.87, the bonus he was paid by Ecolab for that week.  As we have observed, Lemm's calculation failed to take into account that the bonus he received already included overtime on the bonus.  Under Ecolab's application of section 49.2.4, the bonus attributable to the workweek is $416.34, the amount of the bonus paid minus the overtime on the bonus.[9]  The difference between $468.87 and $416.34 is $52.53, the amount representing the overtime on bonus for that week.

Lemm's adoption of the section 49.2.4 formulation, without taking into account that the bonus attributable to the workweek already includes overtime on overtime, contravenes Labor Code section 510 and Wage Order No. 5, which require an employer to pay an overtime premium of 1.5 times the regular rate of pay, not

---

[9]    Ecolab's expert calculated the bonus attributable to the workweek as follows:  First, he determined the regular bonus rate of $7.782 per hour by dividing the portion of the bonus attributable to straight time hours by the number of straight time hours worked in the workweek ($311.28/40 = $7.782).  He then multiplied the regular bonus rate by the total number of hours worked in the workweek to determine the nonovertime portion of the bonus for the workweek ($7.782 x 53.5 = $416.34.)

some greater amount.  Ecolab's calculation thus complies with both federal and California law.

Lemm presented no expert testimony or other evidence that his proposed formula does not include "overtime on overtime." He instead asserts *Alvarado* compels we look to section 49.2.4 rather than CFR 778.210 for the correct formula.

We agree *Alvarado* provides useful guidance as to the applicability of the DLSE Manual, including section 49.2.4.  In *Alvarado*, the Supreme Court determined how to calculate an employee's overtime pay rate when the employee has earned not a percentage bonus (as in the case here) but a flat sum bonus during a single pay period—$15 for working a full shift on a Saturday or Sunday.  (*Alvarado, supra,* 4 Cal.5th at p. 549.)  The *Alvarado* court found section 49.2.4.2 of the DLSE Manual explained how to calculate overtime on flat sum bonuses, the precise issue in dispute in *Alvarado*.  (*Alvarado*, at pp. 559, 561.)  The court was persuaded the DLSE formula was correct but expressly "limit[ed] [its] decision to flat sum bonuses comparable to the attendance bonus at issue here."  (*Id.* at p. 561, n. 6.)

The *Alvarado* court addressed the deference to be accorded to the DLSE Manual, noting the policies in the manual were not regulations adopted according to the Administrative Procedure Act (see Cal. Code Regs., tit. 1, § 250).  Thus, the DLSE Manual was an "underground regulation" not entitled to the same level of deference as the IWC's wage orders.  The high court nevertheless held that courts were not obligated to reject the DLSE Manual outright, "so long as we exercise our independent judgment, we may consider the DLSE's interpretation and the reasons the DLSE proffered in support of it, and we may adopt the DLSE's interpretation as our own if we are persuaded that it is correct.

[Citation.]  And, in doing so, we may take into consideration the DLSE's expertise and special competence, as well as the fact that the DLSE Manual is a formal compilation that evidences considerable deliberation at the highest policymaking level of the agency."  (*Alvarado*, *supra,* 4 Cal.5th at p. 561.)

Having exercised the independent judgment the Supreme Court compels, we are not persuaded Ecolab was required to use the exact formulation presented in the section 49.2.4 example to calculate a percentage-based bonus such as the one Lemm received.  Ecolab demonstrated Lemm would have been paid the same amount whether Ecolab used the section 49.2.4 formula as applied to percentage bonuses or the CFR 778.210 formula, so long as the calculation did not include overtime on overtime.  As we have explained, Lemm's use of the section 49.2.4 example did not address the percentage-based bonus and added an additional overtime premium to a bonus that already included overtime on that bonus.

We are also not persuaded that the DLSE or IWC's failure to incorporate CFR 778.210 into the manual or wage orders means we should disregard it.  Lemm acknowledges that payment of overtime compensation is governed by both federal and state law.  It is only when state law provides more protection to employees that federal law does not control.  (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 594.)  Lemm asserts California law provides more protection to employees in this case because he would receive a higher wage under section 49.2.4 by his calculation than under CFR 778.210.  We agree that, as a general rule, we must adopt the construction that favors the protection of employees.  (*Troester, supra*, 5 Cal.5th at p. 839.)  We do not understand this policy to obligate courts to interpret

state law to give an employee "overtime on overtime" when such an interpretation would be inconsistent with the fundamental principal of overtime which, as embodied in Labor Code section 510 and Wage Order No. 5, is that overtime is paid at 1.5 times the regular rate of pay. We see nothing in California law that favors giving an employee a windfall by using the section 49.2.4 calculation in a way that does not apply to the terms of Lemm's compensation plan.

**B.**

### *REPORTING TIME AND SPLIT SHIFT CLAIMS*

Lemm's final contention is the trial court erred when it granted Ecolab's motion for judgment on the pleadings and denied him leave to amend his complaint. The issue is moot.

On October 2, 2019, Lemm served an amended PAGA notice to the agency, asserting additional claims for reporting time and split shift wage violations. Lemm asserted those claims were encompassed by the same PAGA claim he had already filed with the agency and then alleged in the complaint. Ecolab disagreed.

The parties and the court agreed to defer consideration of the reporting time and split shift claims until after the trial court's ruling on summary adjudication. Accordingly, after the summary adjudication ruling, Ecolab filed a motion for judgment on the pleadings on the reporting time and split shift claims. The trial court ultimately ruled in Ecolab's favor, finding Lemm's complaint did not include allegations of reporting time and split shift wage violations. The court also denied Ecolab leave to amend its pleading to state those claims.

In his opening brief in the current appeal, Lemm argued the trial court erred in its rulings on the motion for judgment on

22

the pleadings and request to amend. On March 4, 2021, shortly before he filed his reply brief in this appeal, Lemm filed a second PAGA action against Ecolab in the Los Angeles Superior Court, case No. 21STCV08647 (*Lemm II*). In his *Lemm II* complaint, he alleged the same claims for reporting time and split shift wage violations that he had asserted in his amended PAGA notice filed with the agency. In his reply brief in the current appeal, Lemm continued to assert the trial court erred in granting the motion for judgment on the pleadings and denying his request to amend. He failed to apprise this court that he had filed *Lemm II*.

On June 27, 2022, Ecolab moved to compel arbitration in *Lemm II*, relying on the recent United States Supreme Court decision in *Viking River Cruises, Inc. v. Moriana* (2022) __ U.S. __ [142 S.Ct. 1906]. In *Viking River Cruises*, the Supreme Court held that a defendant employer was entitled to enforce an arbitration agreement insofar as it mandated arbitration of the plaintiff employee's individual PAGA claim. The high court stated that, because PAGA provides no mechanism to enable a court to adjudicate representative claims once the individual PAGA claim is committed to a separate proceeding, the plaintiff employee lacked standing to maintain her representative PAGA claims. The Supreme Court reversed the California Court of Appeal decision that had affirmed the trial court's denial of the motion to compel arbitration. (*Viking River Cruises*, at p. 1925.)

On August 9, 2022, the trial court in *Lemm II* granted Ecolab's motion to compel arbitration of Lemm's individual reporting time and split shift wage claims and to dismiss his representative claims.

On August 15, 2022, Ecolab filed two documents with this court. The first was a request for judicial notice of the August 9,

23

2022 trial court order in *Lemm II* granting the petition to compel arbitration and dismissing the representative PAGA claim. Ecolab stated in its judicial notice request that the *Lemm II* order was relevant to Lemm's argument that he should have been allowed to amend his complaint in *Lemm I* to include the reporting time and split shift claims. Lemm did not oppose judicial notice, which we granted on August 24, 2022.

The second document Ecolab filed with this court on August 15, 2022, was a letter advising us of the Supreme Court's decision in *Viking River Cruises*. Neither party asked this court for leave to file a letter brief addressing *Viking River Cruises*.

Under these circumstances, we need not consider Lemm's claims that the trial court erred when it granted Ecolab's motion for judgment on the pleadings and denied Lemm's motion to amend. Lemm's reporting time and split shift claims, which underlay the motion for judgment on the pleadings and motion to amend, have now been sent to arbitration in *Lemm II*. There is no relief we may grant on those claims because we have no authority to reverse the trial court's arbitration order in *Lemm II*. By filing *Lemm II* (with the resulting order to compel arbitration), Lemm rendered moot his appeal in this case of those claims. (See *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1588.) By order of the trial court in *Lemm II,* he must now pursue any relief for Ecolab's failure to pay reporting time or split shift wages in arbitration. His appellate remedy for the order compelling arbitration in *Lemm II* is an appeal from any final adverse judgment in *Lemm II*. (*Ashburn v. AIG Fin'l Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94 ["An order granting a petition

to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award"].)[10]

### DISPOSITION

The judgment is affirmed.  Ecolab shall recover its costs on appeal.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

TAMZARIAN, J.[*]

---

[10]    Our discussion of *Viking River Cruises* is not intended to suggest that the decision in that case does or does not have application to any future proceedings dealing with Lemm's report time and split shift claims.

[*]    Judge of the Los Angeles Trial Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25